IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICOH COMPANY, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 25-1095 (JCG) |
| ZOOM COMMUNICATIONS, INC. | ) | |
| f/k/a ZOOM VIDEO | ) | |
| COMMUNICATIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT'S
RENEWED MOTION TO DISMISS THE COMPLAINT**

OF COUNSEL:

Edward D. Johnson
Clifford A. Maier
MAYER BROWN LLP
Two Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306
(650) 331-2000

Michael A. Molano
MAYER BROWN LLP
575 Market Street, Suite 2500
San Francisco, CA 94105
(415) 874-4230

B. Clayton McCraw
Kaitlyn M. Hunt
Shantelle L. Lafayette
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mflynn@morrisnichols.com

*Attorneys for Defendant*

Amanda Steff Bonner
Nicholas H. Ciulla
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600

February 9, 2026

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   NATURE AND STAGE OF PROCEEDINGS...................................................2

III.  STATEMENT OF FACTS ..................................................................................3

IV.  LEGAL STANDARDS......................................................................................3

V.    ARGUMENT......................................................................................................5

  A.    THE '059 PATENT CLAIMS ARE INELIGIBLE (COUNT 2) .................5
    1.  *Alice* Step One..................................................................................5
    2.  *Alice* Step Two..................................................................................6
    3.  Claim 1 is Representative...................................................................8

  B.    THE '548 PATENT CLAIMS ARE INELIGIBLE (COUNT 7) .................9
    1.  *Alice* Step One..................................................................................9
    2.  *Alice* Step Two................................................................................10
    3.  Claim 1 is Representative.................................................................12

  C.    THE '278 PATENT CLAIMS ARE INELIGIBLE (COUNT 6) ...............12
    1.  *Alice* Step One................................................................................12
    2.  *Alice* Step Two................................................................................14
    3.  Claim 1 is Representative.................................................................15

  D.    THE '464 PATENT CLAIMS ARE INELIGIBLE (COUNT 4) ...............16
    1.  *Alice* Step One................................................................................16
    2.  *Alice* Step Two................................................................................17
    3.  Claim 1 is Representative.................................................................19

  E.    THE '487 PATENT CLAIMS ARE INELIGIBLE (COUNT 1) ...............20
    1.  *Alice* Step One................................................................................20
    2.  *Alice* Step Two................................................................................22
    3.  Claim 15 is Representative...............................................................23

  F.  THE '093 PATENT CLAIMS ARE INELIGIBLE  (COUNT 5)..................23
    1.  *Alice* Step One................................................................................23
    2.  *Alice* Step Two................................................................................25
    3.  Claim 1 is Representative.................................................................26

  G.    THE '917 PATENT CLAIMS ARE INELIGIBLE  (COUNT 3) .............27
    1.  *Alice* Step One................................................................................27
    2.  *Alice* Step Two................................................................................29
    3.  Claim 1 is Representative.................................................................29

VI.  CONCLUSION................................................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
 838 F.3d 1266 (Fed. Cir. 2016) ......................................................................7, 16

*AI Visualize, Inc. v. Nuance Communications, Inc.*,
 97 F.4th 1371 (Fed. Cir. 2024) ........................................................5, 11, 15, 24

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
 573 U.S. 208 (2014)..................................................................................*passim*

*Align Tech., Inc. v. 3Shape A/S*,
 339 F. Supp. 3d 435 (D. Del. 2018)...................................................................20

*Apple, Inc. v. Ameranth, Inc.*,
 842 F.3d 1229 (Fed. Cir. 2016) ......................................................5, 18, 26, 29

*Bilski v. Kappos*,
 561 U.S. 593 (2010).............................................................................................3

*Broadband ITV, Inc. v. Amazon.com, Inc.*,
 113 F.4th 1359 (Fed. Cir. 2024) ........................................................................27

*Chargepoint, Inc. v. SemaConnect, Inc.*,
 920 F.3d 759 (Fed. Cir. 2019) ........................................................................2, 6

*ClearDOC, Inc. v. RiversideFM, Inc.*,
 2022 WL 3355960 (D. Del., Aug. 15, 2022)......................................................28

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
 859 F.3d 1352 (Fed. Cir. 2017) ...........................................................................4

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
 776 F.3d 1343, (Fed. Cir. 2014) ....................................................................9, 13

*Customedia Tech., LLC. v. Dish Network Corp.*,
 951 F.3d 1359 (Fed. Cir. 2020) ......................................................8, 14, 18, 22

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
    815 F. App'x 529 (Fed. Cir. 2020) ....................................................................13, 16

*Elec. Power Grp. LLC v. Alstom SA*,
    830 F.3d 1350 (Fed. Cir. 2016) ............................................................................5, 24

*Hawk Tech. Sys. LLC v. Castle Retail LLC*,
    60 F.4th 1349 (Fed. Cir. 2023) .............................................................................6, 13

*IBM Corp. v. Zillow Grp., Inc.*,
    2024 WL 89642 (Fed. Cir. Jan. 9, 2024)...............................................................2

*IBM Corp. v. Zillow Grp., Inc.*,
    50 F.4th 1371 (Fed. Cir. 2022) ...........................................................................21, 24

*Intellectual Ventures I LLC v. Capital One Bank*,
    792 F.3d 1363 (Fed. Cir. 2015) ...........................................................................11

*Intellectual Ventures I LLC v. Symantec Corp*,
    838 F.3d 1307 (Fed. Cir. 2016) ...........................................................................28

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018) ...................................................................6, 8, 16

*Inventor Holdings LLC v. Bed Bath & Beyond, Inc.*,
    876 F.3d 1372 (Fed. Cir. 2017) ...........................................................................6, 25

*MG Freesites Ltd. v. ScorpCast LLC*,
    651 F. Supp. 3d 744 (D. Del. 2023)......................................................................24

*Mortg. Appl. Techs. LLC v. MeridianLink, Inc.*,
    839 F. App'x 520 (Fed. Cir. 2021) ......................................................................18

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016) ...........................................................................4

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015) ...........................................................................18

*Recognicorp LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017) ...........................................................................17

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
    65 F.4th 698 (Fed. Cir. 2023) ...............................................................................1

*Secured Mail Solutions LLC v. Universal Wilde Inc.*,
    873 F.3d 905 (Fed. Cir. 2017) ...........................................................................12

*Simio LLC v. FlexSim Software Prods. Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020) ..........................................................................11

*Smart Sys. Innov. LLC v. Chicago Transit Authority*,
    873 F.3d 1364 (Fed. Cir. 2017) ............................................................................9

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) .....................................................................16, 18

*Trading Techs. Int'l, Inc. v. IBG LLC*,
    921 F.3d 1378 (Fed. Cir. 2019) ...............................................................4, 10, 25

*Trinity Info Media LLC v. Covalent, Inc.*,
    72 F.4th 1355 (Fed. Cir. 2023) ...........................................................................19

*Tuxis Tech. LLC v. Amazon.com, Inc.*,
    2014 WL 4382446 (D. Del., Sep. 3, 2014)..........................................................28

*Two-Way Media Ltd. v. Comcast Cable Communications*,
    874 F.3d 1329 (Fed. Cir. 2017) ..............................................7, 8, 16, 21, 25, 28

*Ubisoft Entertainment SA v. Yousician Oy*,
    814 F. App'x 588 (Fed. Cir. 2020) .....................................................................14

*Ultramercial, Inc. v. Hulu LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ............................................................................10

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ...........................................................................20

*Yu v. Apple Inc.*,
    1 F.4th 1040 (Fed. Cir. 2021) .........................................................................7, 27

**Statutes**

35 U.S.C. §101 ...........................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).........................................................................................1

## I.    INTRODUCTION

Nothing in Plaintiff's 212-page First Amended Complaint ("FAC") changes the Asserted Patents' *claims*.  Each of those claims remain patent ineligible.  "No amendment to a complaint can alter what a patent itself states." *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023).  Defendant respectfully renews its Rule 12(b)(6) Motion to Dismiss.

Each Asserted Patent claims abstract ideas that fail the Supreme Court's *Alice* test for patentability. They are directed to "fundamental human activities" like determining how many people are attending a meeting, changing a recorded name, or selecting information to display on a screen—all using conventional computers. But "generic computer implementation fails to transform [an] abstract idea into a patent-eligible invention."  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 212 (2014).

Rather than contest Zoom's original motion to dismiss (D.I. 17-18), Plaintiff filed the FAC—adding 147 pages of new allegations.  These new allegations only highlight the inadequacies of the Asserted Patents and do nothing to cure their defects.  The solutions and benefits that Plaintiff now attributes to the Asserted Patents are found nowhere in the *patent claims themselves*.  While Plaintiff loads the FAC with technical-sounding lingo, "none of this is in the specification or the claims. These are the same types of conclusory allegations, unsupported by the patent itself,

1

that [the Federal Circuit] ha[s] repeatedly found insufficient to survive the pleading stage." *IBM v. Zillow Grp., Inc.*, 2024 WL 89642, at *5 (Fed. Cir. Jan. 9, 2024).

Nor can the FAC's copied-and-pasted portions of the Asserted Patents' specifications save the claims. "Ultimately, the §101 inquiry must focus on the language of the Asserted Claims themselves, and the specification cannot be used to import details from the specification if those details are not claimed. Even a specification full of technical details about a physical invention may nonetheless conclude with [unpatentable] claims" directed to an abstract idea. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) (cleaned up).

Plaintiff's allegations are still unsupported by the claim language. Even when taken as true, they cannot help it pass the *Alice* test. The claims fail to comply with 35 U.S.C. §101 and are invalid. The FAC (Counts 1-7) should be dismissed with prejudice.

## II.   NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed this action on August 29, 2025, asserting seven patents against Zoom's videoconferencing offerings. D.I. 1. On November 25, 2025, Defendant moved to dismiss the Complaint because all claims are unpatentable under 35 U.S.C. §101. D.I. 17-18. On January 13, 2026, Plaintiff filed its FAC. D.I. 24. Defendant now renews its Motion to Dismiss.

## III.    STATEMENT OF FACTS

The Asserted Patents all describe basic aspects of conferencing—conducted with a computer.  Specifically, they are directed to the following basic subject matter:

| Patent | Subject |
|---|---|
| 10,909,059 ("'059 Patent") | Displaying the *number of* attendees in a conference and *image data* of *fewer than* all attendees. D.I. 24-2 at 50 (Claim 1). |
| 11,546,548 ("'548 Patent") | Displaying and updating *name and attendance information* in a conference. D.I. 24-7 at 28 (Claim 1). |
| 11,516,278 ("'278 Patent") | Transmitting and updating *name information*. D.I. 24-6 at 38 (Claim 1). |
| 11,256,464 ("'464 Patent") | Controlling where images are displayed on two screens. D.I. 24-4 at 20 (Claim 1). |
| 10,904,487 ("'487 Patent") | Displaying a menu and videoconference on a whiteboard window (i.e., *overlapping displayed information*). D.I. 24-1 at 18 (Claim 15). |
| 11,289,093 ("'093 Patent") | Controlling a display based on selection of text from recorded voices. D.I. 24-5 at 82 (Claim 1). |
| 10,931,917 ("'917 Patent") | *Forwarding information from one computer to another*. D.I. 24-3 at 47 (Claim 1). |

## IV.    LEGAL STANDARDS

In a motion to dismiss, patentability under 35 U.S.C. §101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). "[A]bstract ideas are not patentable." *Alice,* 573 U.S. at 216.

3

*Alice* provides a two-step test to determine "whether the claims at issue are directed to a patent-ineligible concept." 573 U.S. at 218.  Under Step One, the court "evaluat[es] the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019) (cleaned up).

If an abstract idea is claimed, the court proceeds to Step Two, where it examines "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217 (cleaned up). "[M]erely requiring generic computer implementation fails to transform that abstract idea into a patent-eligible invention." *Id.* at 212.

Limiting the analysis of a §101 challenge to representative claims is proper when the claims at issue "are substantially similar and linked to the same" ineligible concept. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017).  A claim is representative if the other claims do not "differ in any manner that is material to the patent-eligibility inquiry." *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 n.6 (Fed. Cir. 2016).

## V.    ARGUMENT

### A.    THE '059 PATENT CLAIMS ARE INELIGIBLE (COUNT 2)

#### 1.    *Alice* Step One

The '059 Patent claims the abstract idea of displaying information about a conference—specifically, (i) the number of participants, and (ii) images of fewer than all participants. D.I. 24-2 at 50 (Claim 1). This is the same abstract concept as identifying the number of meeting attendees despite having photos of fewer than everyone.

The claim limitations—individually and collectively—are abstract. Representative Claim 1 first recites "processor processing circuitry" for *displaying information* about the *number of* terminals participating in the videoconference, and "image data" transmitted by those terminals. *Id.* The second limitation recites that *some* video is *not displayed* (*e.g.*, only 10 out of 50 participants are displayed). *Id.* Thus, the claim recites only an abstract *result*—information is displayed—without claiming *how* the result is achieved. But simply claiming "desired results," fails the *Alice* test. *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016).

These features fail *Alice* Step One because "the steps of obtaining, manipulating, and displaying data, particularly when claimed at a high level of generality, are abstract concepts." *AI Visualize, Inc. v. Nuance Communications, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024); *see also Elec. Power Grp. LLC v. Alstom SA*,

830 F.3d 1350, 1353 (Fed. Cir. 2016). Storing and displaying video are abstract concepts. *Hawk Tech. Sys. LLC v. Castle Retail LLC*, 60 F.4th 1349, 1356-57 (Fed. Cir. 2023). Choosing to display fewer than all video streams is also abstract. *Id.* at 1357.

The '059 Patent's purported benefit of simultaneous information display does not save the claims. D.I. 24-2 at 34 (3:58-61). The Federal Circuit has already found claims abstract that "provid[e] someone an additional set of information without disrupting the ongoing provision of an initial set of information." *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1344 (Fed. Cir. 2018).

Thus, the '059 Patent claims an abstract idea.

### 2.    *Alice* Step Two

None of the '059 Patent claims transform the abstract idea into something "significantly more" as required under §101. *ChargePoint,* 920 F.3d at 773. When "the only components disclosed in the specification" to implement the claims are "conventional," there is no "inventive concept." *Inventor Holdings LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1378 (Fed. Cir. 2017).

The '059 Patent uses conventional computing technology and discloses *no improvement* to these admittedly known components.  D.I. 24-2 at 50 (Claim 1). The claimed "processor processing circuitry," "image data," and "display," are generic components used for their intended purpose—processing and displaying information.

This cannot save an otherwise abstract claim. *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021) (no inventive concept where "conventional components" perform "only their basic functions"). The '059 Patent requires only *generic* components: "common PC, a smartphone, a tablet terminal, or the like." D.I. 24-2 at 36 (8:13-20), 34-35 (4:65-5:4). Image data may be transmitted conventionally over the Internet. *Id*. at 35-36 (6:50-7:3). Reciting "generic functional language to achieve [the] purported solutions" without claiming "*how* the desired result is achieved" is unpatentable. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017).

Stripped of conventional computing elements, all that remains is the abstract concept of displaying information—(i) a total number of participants, and (ii) images of fewer than all participants. D.I. 24-2 at 50 (Claim 1). *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016).

Even after amending, Plaintiff still failed to identify any *technical problem* addressed by the claims—instead alleging *user experience improvements* such as "continuous awareness of conference participation" (D.I. 24, ¶128), detecting whether "new participants have joined" (¶¶132-133), or "allowing [users] to focus mental resources" (¶159). But as a matter of law these are irrelevant. "[I]mproving a user's experience while using a computer application is not, without more,

sufficient to render the claims directed to an improvement in computer functionality." *Customedia Tech. LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020).

While Plaintiff attempts to make the '059 Patent *sound* technical, nearly all of these allegations copy and paste portions of the specification found nowhere in the claims. D.I. 24, ¶¶136-158. The '059 Patent does not claim Plaintiff's alleged "auxiliary area" (¶157), "optimization," "dynamic resource allocation," or "event monitoring." *Id.*, ¶¶157-158. Plaintiff alleges "determinations" made by the system (¶¶161-162, 165-168, 187), but no form of "determining" is ever claimed. Instead, *the claims recite only the abstract end-result of displaying information*. Thus, "[t]he main problem that [Plaintiff] cannot overcome is that the claim—as opposed to something purportedly described in the specification—is missing an inventive concept." *Two-Way Media Ltd.*, 874 F.3d at 1338. Plaintiff's conclusory allegations (¶¶169-186) cannot change this fact. *Interval Licensing*, 869 F.3d at 1346 (method of displaying information abstract).

The '059 Patent fails both *Alice* steps and is patent-ineligible.

### 3.    Claim 1 is Representative

Claim 1 is representative because all others are directed to the same abstract idea—displaying information. D.I. 24-2 at 50 (Claims 1-6). Claim 3 recites *how much* information is displayed. Claims 4 and 6 are method versions of claims 1 and 3. Claims 2 and 5 simply elaborate *what* is displayed.

8

**B.    THE '548 PATENT CLAIMS ARE INELIGIBLE (COUNT 7)**

### 1.    *Alice* Step One

The '548 Patent claims the abstract idea of displaying and updating name and attendance information. D.I. 24-7 at 28 (Claim 1). This is like a teacher updating a classroom attendance sheet. The '548 Patent's purported improvement is abstract—simply allowing users to *determine who is present* in a videoconference even when the number of attendees is voluminous. *Id.* at 18 (1:58-62).

Representative Claim 1 recites a "transmission management apparatus for updating attendance states" that has *only two components*:  (i) "a storage medium" to store attendance information, and (ii) "circuitry" configured to "update," "acquire," "transmit," and "display," that attendance information.  D.I. 24-7 at 28. Claim 1 recites *no particular structure*—only the desired results of *what to do* with attendance information. But claims for "the collection, storage, and recognition of data are directed to an abstract idea." *Smart Sys. Innov. LLC v. Chicago Transit Authority*, 873 F.3d 1364, 1372 (Fed. Cir. 2017); *Content Extraction & Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

Plaintiff's FAC attempts to manufacture a "technical problem" by alleging that "users cannot easily identify" who is "attending the conference." (D.I. 24, ¶¶557-560).  But simply displaying a participant list so users can "grasp" which "terminal is attending" (*id.*, ¶¶561-62) or "receive timely notification" (*id.*, ¶609) is

9

an improved *user experience*—not a technical solution.  Plaintiff admits the '548 Patent is merely about user experience by alleging "efficiency" such as "eliminated verbal identification," "faster meeting start," and "reduced confusion" gained from viewing a list of names.  *Id.*, ¶¶610-611.  This "makes the [user] faster and more efficient, not the computer.  This is not a technical solution to a technical problem." *Trading Techs*, 921 F.3d at 1090.

The Federal Circuit has already deemed highly-similar claims about updating an "activity log" as abstract. *Ultramercial, Inc. v. Hulu LLC*, 772 F.3d 709, 714-715 (Fed. Cir. 2014). The same applies here.

### 2.    *Alice* Step Two

Nothing in the '548 Patent claims transforms the abstract idea into a patentable invention. The claims recite conventional components without any "inventive concept" necessary for Step Two.

The '548 Patent specification confirms that all hardware components are conventional—acknowledging that the "transmission management apparatus" comprises known computing components such as a CPU, ROM/RAM, etc. D.I. 24-7 at 9 (FIG. 6), 21 (8:34-59), 22 (9:21-43). Data transmission occurs over basic Internet, Wi-Fi or Bluetooth with "commonly used IP addresses in IPv4." *Id.* at 20 (6:22-36).

10

The '548 Patent claims that the *circuitry* of this conventional equipment achieves the *end-result* of "updat[ing]," acquir[ing]," "transmit[ting]," and "display[ing]," attendance information. This necessarily fails *Alice* Step Two because simply reciting that abstract ideas are performed using a computer is not an inventive concept. *Intellectual Ventures I LLC v. Capital One Bank*, 792 F.3d 1363, 1370-71 (Fed. Cir. 2015).

Plaintiff copies large chunks of the specification into the FAC, but none of these details are found *in the claims themselves*. D.I. 24, ¶¶566-609, 620-655. *AI Visualize*, 97 F.4th at 1380 ("[W]e refuse to import details from the specification if those details are not themselves in the claim."). The few allegations that *do* address the claim language admit the inescapable—that the claims merely recite the unpatentable end-result of updating, acquiring, transmitting, and displaying information. *Id.*, ¶¶623-626, 631. Plaintiff's remaining allegations are conclusory assertions of eligibility. *Id.*, ¶¶563-65, 613-615, 657-71. *Simio LLC v. FlexSim Software Prods. Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6).").

Worse, allegations that the alleged invention provides "network efficiency" by *reducing* "data transmission *compared to video streams*" are actually *contradicted* by the plain language of claims, which recites "display[ing] *video images from each transmission terminal*." Thus, the claims explicitly require transmitting video

streams. Such allegations are properly disregarded because "[i]n ruling on a 12(b)(6) motion, a court need not accept as true allegations that contradict matters…by exhibit, such as the claims and the patent specification." *Secured Mail Solutions LLC v. Universal Wilde Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017). The '548 Patent fails both *Alice* Steps and is patent-ineligible.

### 3.   Claim 1 is Representative

Claim 1 is representative because all claims are directed to the same abstract idea of storing, updating and displaying attendance information. D.I. 24-7 at 28-30 (Claims 1-24). Claims 9-10 and 17 are method, system, and computer-readable versions of Claim 1. Claims 5 and 21 require transmission via an unspecified "relaying apparatus." Claims 6 and 22 specify use of conventional terminals. Claims 11 and 15-16 recite exchanging other information. Claims 12-14 merely recite using "one or more computers." Remaining claims describe the information.

### C.   THE '278 PATENT CLAIMS ARE INELIGIBLE (COUNT 6)

### 1.   *Alice* Step One

When stripped of excess verbiage, the '278 Patent claims are simply the abstract idea of updating a name. D.I. 24-6 at 38 (Claim 1). The alleged improvement is just specifying an "easier" name to be identified with during a conference. *Id.* at 26 (1:63-2:9).

Representative claim 1 recites "[a] management system" with "memories to store" information. But claims directed to collecting, recognizing, and storing data in memory are abstract. *Content Extraction,* 776 F.3d at 1347; *Hawk Tech. Sys.,* 60 F.4th at 1356-1357. The claim further recites "processing circuitry" configured to "transmit," "receive," and "store," name information. D.I. 24-6 at 38 (Claim 1). This "processing circuitry" has no structure—the claim is directed to the *results* of updating name information. *Id.* But merely communicating information is abstract. *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 537 (Fed. Cir. 2020) ("formatting," "transmitting," and "retrieving" data is unpatentable).

The focus of the claim's "transmitting" and "storing" steps is effectively that (i) a name is stored in memory, (ii) another name is transmitted, and then (iii) a *different name* is updated and stored. D.I. 24-6 at 38 (Claim 1). This is just the age-old practice of a conference attendee modifying their nametag, and is abstract.

Plaintiff's allegations underscore that the '278 Patent is simply directed to updating a name. The FAC confirms that the patent relates to a system that "transmits destination name data." D.I. 24, ¶459. The alleged advancement focuses on achieving "easy-to-specify" names. *Id.*, ¶¶460-463. Plaintiff admits the patented process is just the idea of "create[ing] meeting-specific destination names." *Id.*, ¶498.

13

Thus, the alleged "technical problem" is merely a "User Experience Problem" in disguise—solving "confusion" over "generic names."    D.I. 24, ¶¶464-465. Plaintiff's alleged "technical improvements" are to "video conferencing *workflow*" that allow for *user experience improvements* such as "faster meeting setup, reduced meeting interruptions, and improved meeting efficiency."    This fails §101. *Customedia*, 951 F.3d at 1365.

## 2.    *Alice* Step Two

The '287 Patent claims no inventive concept necessary for patentability because they recite only generic computing components.

The specification states the claimed system can be "a videoconference system, a visual telephone system, an audio conference system, a voice-call system, and a personal computer screen sharing system." D.I. 24-6 at 27 (3:55-58).  Any computer can carry out the claims. *Id.* at 28 (5:4-7). The terminals comprise conventional components. *Id.* at 29 (7:17-49). Conventional networks are used for transmission. *Id.* at 28 (5:21-50). The memory is "a random access memory (RAM) 103 used as a work area of the CPU 101." *Id.* at 29 (7:20-23). This is insufficient for patentability because, "[i]f a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques—*e.g.,* a generic computer—the claim has not been transformed into a patent-eligible application of an abstract idea." *Ubisoft Entertainment SA v. Yousician Oy*, 814 F. App'x 588, 592 (Fed. Cir. 2020).

14

Plaintiff's allegations about technical concepts are once again absent from the claims. Copied-and-pasted swaths of the specification are indeed unrelated to *the claims themselves*. D.I. 24, ¶¶468-494, 511-522. There is no "sophisticated multi-table database architecture" (*id.*, ¶¶501, 497) found anywhere in the claims. Only "one or more memories" and "processing circuitry" achieve the claimed *results* of *updating a name*. *AI Visualize,* 97 F.4th at 1380. Plaintiff's other allegations are conclusory. D.I. 24, ¶¶495-96, 500, 466-67, 523-30. These allegations confirm that Plaintiff merely utilizes generic computing components to achieve the end-result of transmitting and storing updated name information.

The essence of the '278 Patent claims—changing a recorded name—is a conventional human activity, like modifying a nametag on a lapel. Doing this with a computer is unpatentable.

### 3.    Claim 1 is Representative

Claim 1 is representative because all claims are directed to the abstract idea of updating a name. D.I. 24-6 at 38-40 (Claims 1-35). Claims 16 and 31 are method and system versions of Claim 1. Claims 4-5, 8-9, 19-20, and 23-24 relate to transmitting information. Claims 7, 14, 22, 29, and 34 are directed to receiving and/or storing information. Claims 15, 27, 30 and 35 recite displaying information. Claims 11 and 26 recite a conventional computer. The remaining claims describe the information. No other claim changes the §101 analysis.

15

**D.    THE '464 PATENT CLAIMS ARE INELIGIBLE (COUNT 4)**

**1.    *Alice* Step One**

The '464 Patent claims the abstract idea of controlling what images are displayed on multiple monitors.  Claim 1 merely recites (i) transmitting and receiving three images; and (ii) choosing which of two monitors displays these images. D.I. 24-4 at 20 (Claim 1). The essence of the claims is that when an incoming video displayed on one monitor is "finished," it is no longer displayed, and other displayed video is simply *not* moved to that monitor. This results-oriented claim is quintessentially abstract. *Two-Way Media*, 874 F.3d at 1337.

Representative Claim 1 recites "a transceiver" to "transmit" and "receive" images over a "network." D.I. 24-4 at 20.  Simply transmitting media over a network is an abstract idea. *Affinity Labs*, 838 F.3d at 1269; *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 609 (Fed. Cir. 2016); *Dropbox*, 815 F. App'x at 537. Claim 1 next recites a "display control circuit" that prevents images from moving to a display once an image is removed. D.I. 24-4 at 20. But "enabling control over when to display the acquired content, for how long, and then displaying it," is an abstract idea. *Interval Licensing*, 896 F.3d at 1340, 1345.

Nor does requiring the display of different images on different displays save the claims. *Recognicorp LLC v. Nintendo Co., Ltd.* addressed claims directed to displaying different images on different displays, but the Federal Circuit held them

16

patent-ineligible, noting that, "organizing, displaying, and manipulating data encoded for human- and machine-readability is directed to an abstract concept." 855 F.3d 1322, 1326 (Fed. Cir. 2017).

The FAC alleges that the '464 Patent addresses a technical problem "based on detecting hardware configurations" (D.I. 24, ¶340)—but that is *not claimed*. The claims do not require "detecting" or "optimizing" anything. *Id.*, ¶335-339. They simply recite that one display displays two images and another displays a third image (regardless of hardware configuration). Once again, Plaintiff's allegations are entirely untethered from the patent's claims.

### 2.    *Alice* Step Two

No inventive concept transforms the '464 Patent's claims into patent-eligible subject matter.

None of the claimed components (communication device, network, transceiver, displays) are purportedly new or improved. Rather, the "network can comprise any conventional terrestrial or wireless communications network, such as the Internet." D.I. 24-4 at 19 (12:29-32). The "processing apparatus can [be] any suitably programmed apparatuses such as a general purpose computer, personal digital assistant, mobile telephone…." *Id.*, (12:32-35).

As for the claimed "display control circuit," the '464 Patent fails to disclose any *circuitry* at all, instead disclosing the *result* of controlling image display on

17

multiple monitors.  Stripped of conventional elements, what remains is the abstract concept of exchanging images, and controlling their display. This lacks any inventive concept. *In re TLI Commc'ns,* 823 F.3d at 615. The patent claims no new implementation—only "desired results." *Apple*, 842 F.3d at 1244.

The '464 Patent cannot survive *Alice* simply by streamlining the process of moving images across monitors. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("[R]elying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible.").  In fact, the '464 Patent acknowledges that its solution of monitor selection can be performed by a human but simply "save[s] the operation performed by the user…."  D.I. 24-4 at 17 (8:21-23).  "[M]ere automation" does not render the claims any less abstract. *Mortg. Appl. Techs. LLC v. MeridianLink, Inc.*, 839 F. App'x 520, 526 (Fed. Cir. 2021).  The FAC confirms that the '464 Patent is directed to unpatentable automation and user-experience benefits. D.I. 24, ¶¶291-93 (improving display of images), ¶¶325, 329 ("in an efficient manner without user input"), ¶350 ("enhances user experience during video conferences by optimizing screen real estate"), *see also* ¶¶330-334.  *Customedia*, 951 F.3d at 1365.

The FAC further alleges non-conventional "computer operations," but these are *not claimed*. D.I. 24, ¶¶341-346.  None of the alleged "real-time electrification state monitoring of multiply display devices with automatic configuration,"

18

"intelligent content-type segregation displays," or "dynamic arrangement table modification based on detected hardware configuration changes" are *anywhere in the claims*. *Id.*, ¶347. While Plaintiff alleges that various transceivers, control circuits and interfaces are "specialized components" (*id.*, ¶348), the patent merely discloses conventional computing devices (*supra*, 17-18).

Plaintiff's conclusion that the claims are "firmly rooted in video conferencing and display management technology" does not change the result. D.I. 24, ¶339. That meetings are *computerized* is irrelevant. "Similarly, a human could not communicate over a computer network without the use of a computer, yet [the Federal Circuit] held that claims directed to enabling 'communication over a network' were focused on an abstract idea in *ChargePoint*." *Trinity Info Media LLC v. Covalent, Inc.*, 72 F.4th 1355, 1364 (Fed. Cir. 2023).

The '464 Patent fails both *Alice* Steps and is patent-ineligible.

### 3.    Claim 1 is Representative

Claim 1 is representative because all claims relate to the same abstract idea of communicating images, and controlling their display. D.I. 24-4 at 20 (Claims 1-10). Claims 5 and 9 are method and computer-readable medium versions of Claim 1. Claims 2-3 and 6-7 merely specify image type. The remaining claims merely refer to receiving information.

19

### E.    THE '487 PATENT CLAIMS ARE INELIGIBLE (COUNT 1)

#### 1.    *Alice* Step One

The '487 Patent claims the abstract idea of displaying overlapped information. Claim 15 is just a method of displaying a selection menu and videoconference window on top of a displayed whiteboard window—*i.e.*, displaying overlapped information. D.I. 24-1 at 18 (Claim 15). This is an abstract idea. *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 452 (D. Del. 2018) (finding claims for superimposing an image on top of another image as abstract).

Representative Claim 15 is abstract because it simply claims the result of overlapping images using conventional computer elements. *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1350 (Fed. Cir. 2021) ("[C]onventional components [combined] in a conventional way to achieve an expected result" are abstract.). Claim 15 recites a "whiteboard session window," including a "whiteboard session content area" with a "selection menu," being "overlaid on the interactive whiteboard session window." D.I. 24-1 at 18 (Claim 15). The claim next recites a "videoconference window to be overlaid on the interactive whiteboard session window." Thus, Claim 15 recites conventional graphical user interface elements such as application windows and menus, and claims only the *result* of overlaying them on top of one another.

20

The '487 Patent's purported advancement over the prior art confirms the claims are abstract. The specification states that "[t]here is limited capability … to use other applications on interactive whiteboard appliances concurrent with the sharing of an electronic whiteboard." D.I. 24-1 at 13 (1:35-38). The purported advancement is nothing more than "graphical user interface controls displayed on the interactive whiteboard" so that users can operate both applications. *Id.* at 14 (3:6-12). Thus, the focus of the claims is overlaying a menu and videoconference window on a whiteboard window, which is an ineligible abstract idea. *IBM Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377-79 (Fed. Cir. 2022) (finding claims for updating display on top of a map as abstract).

Plaintiff again attempts to allege solutions to technical problems unrelated to the claims. The claims say nothing about "an application manager that coordinates window layering, provides intuitive controls, and enables seamless switching" (D.I. 24, ¶¶54-55); "WS_EX_TOPMOST," "specific API calls like FindWindow()," "state management" (*id.*, ¶¶79-80); or "programmatically controlling window layering using OS-level functions" (*id.*, ¶¶93-94). Remaining allegations simply detail aspects of the specification absent from the claims (*id.*, ¶¶56-60). *Two-Way Media*, 874 F.3d at 1338.

### 2.    *Alice* Step Two

There is no "inventive concept" that transforms the claims into patentable subject matter. The specification admits the claimed invention requires no new technology: "[E]mbodiments are not limited to any specific combination of hardware circuitry and software." D.I. 24-1 at 17 (9:54-55). The patent is "not limited to any particular implementation of communication interface 130" and the computer "is not limited to any particular computing architecture 140." *Id.* at 14 (4:30-34), 15 (5:14-18). Thus, the claims do not recite any new user interface, software or hardware components. Plaintiff's allegations contradict these clear statements—baldly characterizing generic components as "unconventional hardware" without regard to *the content of the claims*. D.I. 24, ¶¶62-78, 98-101.

The '487 Patent is simply directed to using conventional components to overlap application windows so a user can use them concurrently. D.I. 24-1 at 13 (1:35-38). Plaintiff's allegations confirm this is simply user experience-related, like improving "reduced collaboration effectiveness" (D.I. 24, ¶61), "remain[ing] visible while users interact with whiteboard content" (*id.*, ¶81), "preserving the social presence" of a video conference (*id.*), and "manag[ing] concurrent application windows" (*id.*, ¶92) "in a user-friendly manner" (*id.*, ¶97). But, "improving a user's experience" is insufficient under §101. *Customedia Tech.,* 951 F.3d at 1365.

Accordingly, Claim 15 is unpatentable.

### 3.    Claim 15 is Representative

Claim 15 is representative because all claims are directed to the same abstract idea of overlaying displayed items. D.I. 24-1 at 17-18 (Claims 1-20). Claims 1 and 8 are apparatus and "computer readable medium" versions of Claim 15.  Claims 2, 9 and 16 describe what is displayed. Claims 3, 10 and 17 add a conventional menu. Claims 4, 11 and 18 deal with the videoconference window location.  Claims 5, 12, and 19 state which overlapped item is on top. Claims 6, 13 and 20 specify transmission of information. The remaining limitations require display of conventional context-sensitive menus.

### F.    THE '093 PATENT CLAIMS ARE INELIGIBLE  (COUNT 5)

### 1.    *Alice* Step One

The '093 Patent claims the abstract idea of synchronizing displayed information (namely, video playback location and corresponding text). Representative Claim 1 is directed to a "display control apparatus" with "circuitry" that (i) receives text data converted from voice data, (ii) displays this text, and (iii) allows the user to update a video playback indicator by selecting corresponding text. D.I. 24-5 at 82 (Claim 1). Conceptually, this is akin to conventional DVD players that display chapter thumbnails that, when selected, jump the playback position to the selected chapter.  It is another results-oriented abstract idea.

23

Claim 1 recites undescribed "circuitry" that is configured to "receive" information and "control" a display to "display" information. D.I. 24-5 at 82 (Claim 1). This claim recites desired "display" results with no specific structure, and is abstract in nature. *AI Visualize*, 97 F.4th at 1378.

Claim 1 next recites controlling the display to achieve other results. Text is displayed and sorted by time (like a transcript). A "graphical control region" that indicates playback position is displayed. "First text data" from the transcript is "select[ed]," and then, based on the corresponding timestamp, the video playback position is updated (e.g., if the user clicks on text with timestamp 3:15, the video playback position indicator updates to 3:15). However, the Federal Circuit has held synchronizing display of multiple streams of information based on time-stamps is abstract. *Elec. Power Grp.*, 830 F.3d at 1351-54; *see also IBM*, 50 F.4th at 1377-78.

The '093 Patent's alleged improvement over the prior art further confirms it is an abstract idea. The '093 Patent simply allows a user to "select a specific point in time" to play a video by selecting corresponding text. D.I. 24-5 at 57 (1:24-34). This is akin to "denoting where certain content is found inside a video," which this District has found is "no different than placing a bookmark in a book to indicate where an interesting passage begins." *MG Freesites Ltd. v. ScorpCast LLC*, 651 F. Supp. 3d 744, 752 (D. Del. 2023).

Plaintiff alleged "technical" problems are not technical at all—they are basic applications of using a computer for user efficiency, like preventing "manual search[es] for the corresponding moment" or "mentally map[ping] text" (D.I. 24, ¶380) such that "the user does not have to *manually* move" the selection bar (*id.*, ¶385).   These are facially non-technical solutions that simply provide *user efficiencies* like "efficient meeting review" and "reduced meeting preparation time" (*id.*, ¶399)—not enhancements to computer functionality.  *Trading Techs,* 921 F.3d at 1090.

Plaintiff's remaining characterizations of "technical" problems have no relation to the claims at all.   There is no "event-driven content processing architecture," or "multimedia database management" (D.I. 24, ¶377) in the claims. Nor is there "a content management database with comprehensive metadata" (*id.*, ¶397) or "distributed processing load" with "scalable database design" (*id.*, ¶397). *Two-Way Media*, 874 F.3d at 1338.

Accordingly, the '093 Patent claims are abstract.

### 2.    *Alice* Step Two

Once again, there is no inventive concept that renders this abstract idea patentable. The only components in the '093 Patent specification are "conventional" and thus "do not supply an inventive concept." *Inventor Holdings*, 876 F.3d 1378. The specification states, "[e]ach of the functions of the described embodiments may

be implemented by one or more processing circuits or circuitry….For example, the processing circuitry is implemented by one or more microprocessors, super computers, and central processing units.  A processing circuit also includes devices such as … conventional circuit components arranged to perform the recited functions." D.I. 24-5 at 82 (51:27-39).

Plaintiff's allegations are untethered from the claims.  There is no "unique and unconventional circuitry" *anywhere in the claims* (D.I. 24, ¶¶383-396, 416-423, 429)—only the *unpatentable end-result* of "control[ling]" and "determin[ing]." *Apple*, 842 F.3d at 1244. The '093 Patent claims use conventional hardware, and are unpatentable under *Alice*.

### 3.     Claim 1 is Representative

Claim 1 is representative because all claims recite the abstract idea of synchronizing displayed information. D.I. 24-5 at 82-83 (Claims 1-22). Claims 10, 17 and 22 are system, method, and computer-readable versions of Claim 1.

Claims 2 and 18 describe the information. Claims 3 and 4 recite conventional GUI elements.  Claims 5, 11, 13, 16-17, and 19-20 recite receiving or displaying information. Claims 6, 12, 14 and 22 recite communicating additional information. Claim 7 specifies that a single sentence is selected.  Claims 8-9 recite conventional memory and unspecified circuitry for storing or transmitting information.  Claim 15 recites conventional computing hardware.  No claim alters the §101 analysis.

## G.    THE '917 PATENT CLAIMS ARE INELIGIBLE  (COUNT 3)

### 1.    *Alice* Step One

The '917 Patent is directed to the abstract idea of forwarding data from one computer to another.

Representative Claim 1 uses a generic computer to (i) log into a videoconference system, (ii) connect an external device to it, and (iii) transmit video data from that external device.  D.I. 24-3 at 47 (Claim 1). Stripped of its verbiage, this claims the abstract *result* of forwarding data from one computer to another.  This is no different than the traditional game of "telephone," where messages are passed from person to person, but "with a computer."

Claim 1 is directed to "circuitry" for transmitting data and enabling communication. The claim recites *no circuit details*, instead reciting desired *results*.

The first result, "obtain first video data captured by a camera," says nothing about *how* video data is captured. Similarly, in *Yu*, the Federal Circuit found a claim reciting a "digital image processor" for "receiving said first digital image and said second digital image" to be abstract. 1 F.4th at 1042-1043.

The next result is "log into a management system by transmitting a login request."  Logging-in is "well-understood, routine, and conventional," and is abstract. *Broadband ITV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1372-1373 (Fed. Cir. 2024).

The claim next recites establishing a communication session for data transmission. As discussed *supra* at 16, transmitting video information is abstract. And establishing a communication session has been found abstract in this District. *ClearDOC, Inc. v. RiversideFM, Inc.*, 2022 WL 3355960 at \*3 (D. Del., Aug. 15, 2022); *Tuxis Tech. LLC v. Amazon.com, Inc.*, 2014 WL 4382446, at \*6 (D. Del., Sep. 3, 2014) (holding "establishing a communication" abstract).

The claim requires data be obtained from "an external input apparatus that has not logged into the management system." Obtaining data and logging in are abstract ideas (*supra*); *not* logging in—which requires no action—is just as abstract.

The final limitation recites receiving and then transmitting video data. But forwarding information is abstract. *Two-Way Media,* 874 F.3d. at 1338; *see also Intellectual Ventures I LLC v. Symantec Corp*, 838 F.3d 1307, 1319-21 (Fed. Cir. 2016) (finding claim using an "intermediary computer in forwarding information" unpatentable).

Plaintiff alleges a technical benefit of "increased system processing load" (D.I. 24, ¶218), but the claims are not directed to a system at all.  They only claim a "first transmission terminal" by itself and Plaintiff alleges no technical benefit to the claimed terminal.   Other FAC allegations are also not claimed, including "maintain[ing] session state for additional devices beyond the core transmission terminals," "track[ing] permissions and access rights for external devices," and

"manag[ing] data routing from these devices to conference participants." *Id.* Other allegations are also unclaimed (*id.*, ¶¶221-238) and/or simply improve user experience (*id.*, ¶238 ("Improved Collaboration Dynamics")). Plaintiff has again ignored its *claims*.

### 2.    *Alice* Step Two

The '917 Patent abstract idea has no inventive concept because the claimed terminals may be conventional "television or video conference systems, videophone systems, voice conference systems, voice telephony systems, and PC (Personal Computer) screen sharing systems." D.I. 24-3 at 33 (3:66-4:2). The hardware comprises conventional CPUs and ROM/RAM. *Id.* at 34-35 (6:42-7:2), (7:44-55).

Like the others, this patent describes no implementation of the abstract idea; instead merely stating a "desired result" without "claim[ing] any method for achieving that result." *Apple, Inc.*, 842 F.3d at 1244. Accordingly, the claims are unpatentable under *Alice*.

### 3.    Claim 1 is Representative

Claim 1 is representative because all claims recite the abstract idea of forwarding transmitted video. D.I. 24-3 at 47-48 (Claims 1-15). Claims 8 and 15 are method and computer-readable versions of Claim 1. Dependent Claims 2 and 9 add an undescribed "relay apparatus." Claims 3 and 10 add abstract limitations relating to receiving information and choosing a relay apparatus (without explaining *how* to

29

choose). Claims 4 and 11 recite abstract steps of receiving information, and executing unspecified software. Claims 7 and 15 recite "establish[ing] the communication session." The remaining claims recite transmitting other information.

## VI.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss this action with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Michael J. Flynn*

OF COUNSEL:

Edward D. Johnson
Clifford A. Maier
MAYER BROWN LLP
Two Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306
(650) 331-2000

Michael A. Molano
MAYER BROWN LLP
575 Market Street, Suite 2500
San Francisco, CA 94105
(415) 874-4230

B. Clayton McCraw
Kaitlyn M. Hunt
Shantelle L. Lafayette
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500

_____
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mflynn@morrisnichols.com

*Attorneys for Defendant*

30

Amanda Steff Bonner
Nicholas H. Ciulla
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600

February 9, 2026

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that counsel has complied with the requirements in the Court's Standing Order of 14-point font and Times New Roman typeface. The above supporting brief contains 6,233 words.

/s/ Michael J. Flynn
Michael J. Flynn (#5333)

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 9, 2026, upon the following in the manner indicated:

John G. Day                                          *VIA ELECTRONIC MAIL*
Andrew C. Mayo
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
*Attorneys for Plaintiff*

Brett C. Govett                                      *VIA ELECTRONIC MAIL*
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
*Attorneys for Plaintiff*

Michael V. Solomita                                  *VIA ELECTRONIC MAIL*
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
*Attorneys for Plaintiff*

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)