IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICOH COMPANY, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 25-1095 (JCG) |
| ZOOM COMMUNICATIONS, INC. | ) | |
| f/k/a ZOOM VIDEO | ) | |
| COMMUNICATIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S
<u>RENEWED MOTION TO DISMISS THE COMPLAINT</u>**

OF COUNSEL:

Edward D. Johnson
Cliff A. Maier
MAYER BROWN LLP
Two Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306
(650) 331-2000

Michael A. Molano
MAYER BROWN LLP
575 Market Street, Suite 2500
San Francisco, CA 94105
(415) 874-4230

Amanda Steff Bonner
Nicholas H. Ciulla
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mflynn@morrisnichols.com
*Attorneys for Defendant*

B. Clayton McCraw
Kaitlyn M. Hunt
Shantelle L. Lafayette
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500

March 13, 2026

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    '059 Patent .........................................................................................................3

III.   '548 Patent .........................................................................................................5

IV.   '278 Patent .........................................................................................................7

V.    '464 Patent .........................................................................................................9

VI.   '487 Patent .......................................................................................................10

VII.  '093 Patent .......................................................................................................11

VIII. '917 Patent .......................................................................................................13

IX.   REPRESENTATIVE CLAIMS ........................................................................14

X.    CONCLUSION.................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
97 F.4th 1371 (Fed. Cir. 2024) ...................................................*passim*

*Amdocs v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016) ...................................................7, 13

*Berkheimer v. HP, Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ...................................................14

*Beteiro LLC v. DraftKings, Inc.*,
104 F.4th 1350 (Fed. Cir. 2024) ...........................................2, 6, 9, 13

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) ...................................................9

*Core Wireless v. LG Elec.*,
880 F.3d 1356 (Fed. Cir. 2018) ...............................................4, 8, 11

*Data Engine v. Google*,
906 F.3d 999 (Fed. Cir. 2018) ...................................................11

*Diogenes Ltd. v. DraftKings, Inc.*,
623 F. Supp. 3d 423 (D. Del. 2022)..............................................14

*Dropbox, Inc. v. Synchronos Techs., Inc.*,
815 F. App'x 529 (Fed. Cir. 2020) ...............................................8

*GoTV Streaming LLC v. Netflix, Inc.*,
166 F.4th 1053 (Fed. Cir. Feb. 9, 2026) ...................................2, 6, 8, 14

*Hawk Tech. Sys. LLC v. Castle Retail LLC*,
60 F.4th 1349 (Fed. Cir. 2023) ...............................................3, 4, 5, 8

*IBM Corp. v. Zillow Grp. Inc.*,
2024 WL 89642 (Fed. Cir. 2024) ...........................................6, 7, 8, 9

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 ...................................................14, 15

*Mortg. Appl. Techs. LLC v. MeridianLink, Inc.*,
   839 F. App'x 520 (Fed. Cir. 2021) .................................................................9

*Realtime Data LLC v. Array Networks, Inc., et al.*,
   2023 WL 4924814 (Fed. Cir. 2023) ...............................................................1

*Sanderling Mgmt. Ltd. v. Snap, Inc.*,
   65 F.4th 698 (Fed. Cir. 2023) ....................................................................2, 5

*Trading Techs. Int'l, Inc. v. IBG LLC*,
   921 F.3d 1084 (Fed. Cir. 2019) ...................................................................11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ...................................................................10

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) ........................................3

*Yu v. Apple Inc.*,
   1 F.4th 1040 (Fed. Cir. 2021) ............................................................3, 4, 5, 7

\*All emphasis added unless otherwise noted.

iii

## I.    INTRODUCTION

Ricoh responded to Zoom's original motion by inserting dozens of pages of patent specifications, and pages of conclusory allegations untethered to the claims, into an Amended Complaint ("FAC"). Ricoh's Opposition attempts to conjure a factual dispute from this volume.  But, "[c]onclusory allegations, or those wholly divorced from the claims or the specification cannot defeat a motion to dismiss." *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1380 (Fed. Cir. 2024) (cleaned up).  Ricoh even suggests that the volume of patents *it asserted* is a basis for denial.  D.I. 30 at 5-6.  Contrary to Ricoh's assertion, the Federal Circuit affirmed Judge Connolly's dismissal of eight patents (200+ claims) in a similar scenario. *Realtime Data LLC v. Array Networks, Inc., et al.*, 2023 WL 4924814 (Fed. Cir. 2023).

Hiding behind the FAC, Ricoh never takes Zoom's Motion head-on.  Ricoh ignored: Federal Circuit authority invalidating results-based claims directed to manipulating and displaying information, Zoom's specific analysis of each patent's claims, and how the FAC allegations are conclusory and untethered to those claims. Ricoh stayed silent on new, on-point authority guiding evaluation of §101—"An ineligibility analysis depends on the language of the claims themselves" and "only features that are claimed, not unclaimed details that appear in the specification can

1

supply something beyond ineligible matter." *GoTV Streaming LLC v. Netflix, Inc.*, 166 F.4th 1053, 1060-61 (Fed. Cir. Feb. 9, 2026).

Instead, Ricoh bulk-cites hundreds of paragraphs from its FAC insisting that "technical solutions" satisfy Step One without explaining the claims. For Step Two, Ricoh never disputes that each patent's specification admits to using components like "a general purpose computer," "a CPU," "conventional circuit components," "terminals," and "displays." Ricoh demands the Court accept its conclusory statements that such components are unconventional. But a specification that "describes the components and features listed in the claims generically" "supports the conclusion that the components and features are conventional." *Beteiro LLC v. DraftKings, Inc.*, 104 F.4th 1350, 1358 (Fed. Cir. 2024). Ricoh's allegations "are neither specifically tied to the claimed invention" nor "plausible (in light of the specification's description of generic technology)." *Id.* at 1359.

At bottom, Ricoh never addresses its patents' critical flaw—that *all of the claims* recite unpatentable results-based language like storing, receiving, updating, transmitting, and displaying. *GoTV*, 166 F.4th at 1064. They admittedly just improve web-conferencing experience, not "computer functionality." *Sanderling Mgmt. Ltd. v. Snap, Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023).

Zoom's Motion established that all claims are ineligible. Resolving eligibility now minimizes "expenditure of time and money by the parties and the court" and

2

"protects the public" from illegitimate patents. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring).

## II.    '059 PATENT

**<u>Step One</u>:**  Rather than disputing that the '059 Patent claims the abstract idea of displaying the *number* and *images* of conference participants, Ricoh argues the FAC alleges "technical improvements" over the prior art.  D.I. 30 at 10-11.  But, "[t]he analysis at step one must focus on the claim language." *Hawk Tech. Sys. LLC v. Castle Retail LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023).

Claim 1 recites a "transmission terminal" with a "processor" configured to "display, on a screen."  But "[t]here is no recitation in the claim about *how*" to display anything "much less in a manner that would meaningfully support a technical solution. . . ." *AI Visualize*, 97 F.4th at 1379.  Claim 1 just recites the *result* of *what is displayed*.  Thus, even though Ricoh alleges that the '059 Patent overcame problems (D.I. 30 at 11), "claim 1's solution to those problems is the abstract idea itself." *Yu v. Apple Inc.*, 1 F.4th 1040, 1044 (Fed. Cir. 2021).

Ricoh further relies on features *that are not in the claims*.  D.I. 30 at 10-11. The *claims* do not "coordinate real-time status information with video stream rendering," "determine" anything, or "set the upper display limit." *Id.* "In these circumstances, the mismatch between the specification statements that [Ricoh] points to and the breadth of claim 1 underscores that the focus of the claimed advance

3

is the abstract idea and not the particular configuration discussed in the specification . . . ." *Yu*, 1 F.4th at 1045. Thus, Ricoh's "wholly divorced" allegations "cannot defeat a motion to dismiss." *AI Visualize*, 97 F.4th at 1380.

Tellingly, Ricoh fails to distinguish Zoom's authority. D.I. 28 at 5-6. It relies on *Core Wireless v. LG Elec.*, but those claims recited specific details including "a particular manner by which the summary window must be accessed." 880 F.3d 1356, 1362-63 (Fed. Cir. 2018).

**<u>Step Two</u>:** Rather than stating *what in the claims* provides an inventive concept, Ricoh bulk-cites dozens of FAC paragraphs. D.I. 30 at 23-24. Ricoh boasts enhanced "display management capabilities" as a "technical improvement." *Id.* "But even if the claims achieved this purported solution, they only use generic functional language to do so and require nothing other than conventional computer and network components according to their ordinary meanings." *Hawk Tech.*, 60 F.4th at 1358 (cleaned up).

The '059 Patent acknowledges that transmission terminals, displays, and processors exist and requires only "common" components. D.I. 24-2 at 1:29-38, 8:13-20, 4:65-5:4; FAC ¶129. Courts find similar disclosures to acknowledge conventionality. *Sanderling*, 65 F.4th at 705; *Hawk Tech.*, 60 F.4th at 1358-59. Moreover, FAC ¶¶180-187 addressing conventionality are conclusory, "divorced from the claims," and raise no factual dispute. *AI Visualize*, 97 F.4th at 1380. This

4

lacks an inventive concept because "the generic hardware limitations of claim 1 merely serve as a conduit for the abstract idea." *Yu*, 1 F.4th at 1045.

### III.    '548 PATENT

**Step One:**    Ricoh does not dispute that the '548 Patent's purported advancement is "allowing *users to determine who is present* in a videoconference even when the number of attendees is voluminous." D.I. 28 at 9; D.I. 24-7 at 1:58-62; FAC ¶562. That's the abstract idea of displaying and updating name and attendance information. *AI Visualize*, 97 F.4th at 1378 ("*Alice* step one inquiry [is conducted] by examining the focus of the claimed advance over the prior art.").

Claim 1 embodies this abstract idea. It contains two components—a storage medium and circuitry. D.I. 28 at 9. The rest of the claim recites the unpatentable *results* of storing, updating, acquiring, transmitting, and displaying attendance information. *GoTV*, 166 F.4th at 1064 (collecting cases).

Ricoh never addresses this point, instead insisting the FAC alleges a "technical improvement" involving "improved network efficiency, system scalability, video conferencing workflow, and enhanced security." D.I. 30 at 20-21. "But neither the claims nor the specification include any such information, and these portions of the [FAC] do not cite the patent at all." *IBM Corp. v. Zillow Grp. Inc.*, 2024 WL 89642 at *4 (Fed. Cir. 2024); FAC ¶¶560, 609. Rather, the patent focuses on the non-

5

technical improvement of displaying an updated participant list so that *users know who is attending*.  D.I. 28 at 9-11.

Ricoh regurgitates the FAC's alleged "technical solution" without ever responding to Zoom's argument—none of this content is *in the claims*.  D.I. 28 at 9-11.  Ricoh cites 46 paragraphs that allegedly "tie[] the claim language" to the "technical solutions."  D.I. 30 at 21 (citing ¶¶613-659).  But these paragraphs discuss specification portions detailing *additional features not in the claims*, *and which do not mention any alleged benefits*.  Allegations like these—untethered to the claims—warrant dismissal.  *Zillow*, 2024 WL 89642 at *4-5; *AI Visualize*, 97 F.4th at 1380; *Beteiro*, 104 F.4th at 1358.

**Step Two:**    The '548 Patent recites that the claimed "transmission management apparatus for updating attendance states," "storage medium," and "circuitry" are conventional components.  D.I. 28 at 10-11; D.I. 24-7 at 8:34-59, 9:21-43.  The remaining limitations recite results, and thus "the generic hardware limitations" merely serve as "a conduit for the abstract idea."  *Yu*, 1 F.4th at 1045.

Ricoh cites FAC ¶¶663-670, which parrots the claim and baldly concludes that the limitations are "not well-understood, routine, or conventional."  Ricoh's remaining argument is a bulk-citation of nearly 100 paragraphs from its FAC without ever explaining which *specific paragraphs*—let alone *what in the claims*—provides an "inventive concept."  D.I. 30 at 25.  Zoom's Motion explained how these

conclusory allegations are untethered to the claims.  D.I. 28 at 11-12.  The alleged computer functionality benefits (D.I. 30, 20-21; FAC ¶¶557-662) are nowhere discussed "in the specification or the claims.  These are the same types of conclusory allegations, unsupported by the patent itself" that are "repeatedly found insufficient to survive the pleading stage. *Zillow*, 2024 WL 89642, at 5.

*Amdocs v. Openet Telecom Inc.*, does not save Ricoh because that decision hinged on a claim construction that required a claimed "enhancing" step to mean "[apply]ing a number of field enhancements in a distributed fashion," which embodied the technical contribution.  841 F.3d 1288, 1300 (Fed. Cir. 2016).  Ricoh *never suggests any claim constructions* to its results-based claims.

## IV.    '278 PATENT

**<u>Step One</u>:**  Ricoh never explains *how* claim 1 amounts to more than updating a name on a computer. D.I. 30 at 18.  Other than reciting generic memories and processing circuity, claim 1 just explains *what* information is stored and the *results* of transmitting and receiving that information—updating a name. D.I. 28 at 13. This is quintessentially abstract.  *Hawk Tech.*, 60 F.4th at 1356-57; *Dropbox, Inc. v. Synchronos Techs., Inc.*, 815 F. App'x 529, 537 (Fed. Cir. 2020).

Ricoh argues that the patent "uses hardware and software to identify context-relevant names" rather than "generic identifiers," but the words "context" and "generic" don't even appear in the patent.  Ricoh then relies on features like

7

"operation input receiving unit," "terminal management database," and "destination list management database"—which *aren't claimed*.  D.I. 30 at 19;  *GoTV*, 166 F.4th at 1060-61.  Ricoh alleges an improvement to "computer functionality" achieved through "multi-table database architecture" component such as "managing units" and "reading units" that also *aren't claimed*.  The '278 Patent doesn't mention the alleged "improved network performance at all."  *AI Visualize*, 97 F.4th at 1380.

The '278 Patent's only purported improvement is achieving "easy-to-specify" names.  D.I. 28 at 13; FAC ¶¶460-463.  The FAC even admits this solves unpatentable "User Experience Problems."  *Id.* ¶¶464, 504-505.  *Zillow,* 2024 WL 89642 at *4.  This is unlike *Core Wireless*, whose *claims required* particular application configurations and machine states.  880 F.3d at 1362-63.

**Step Two:**  Ricoh alleges "unconventional" components (FAC ¶¶466, 495-496) by citing features in the specification not found in the claims.  D.I. 30 at 19 (¶¶467-494).  Ricoh purports to "tie" these features to the claim language, but simply intermixes unclaimed features throughout its discussion of claim 1, which cannot be imported.  *Id.*, ¶¶506-525; *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019).  Other paragraphs are just conclusory allegations that limitations are not conventional.  D.I. 30 at 26; FAC ¶¶526-530.

Other allegations contradict the specification—rendering them implausible.  *Beteiro*, 104 F.4th at 1359.  The patent concedes that any form of conference system

using any computer, with conventional components and memory, can be used.  D.I. 28 at 14; D.I. 24-6, 3:55-58, 5:4-7, 7:17-49, 5:21-50, 7:20-23.

## V.    '464 PATENT

**Step One:**  Ricoh admits its claimed technical improvement over the prior art is directed at automation, efficiency, and user-experience. D.I. 30 at 14-15, 24; FAC ¶¶292-294, 323); *Zillow,* 2024 WL 89642 at *4; *Mortg. Appl. Techs. LLC v. MeridianLink, Inc.*, 839 F. App'x 520, 526 (Fed. Cir. 2021). It never disputes the claims embody the abstract idea of controlling what images are displayed on multiple monitors.  D.I. 28 at 16.  Ricoh even admits that the '464 Patent is directed at "how to optimally display different categories of content across multiple displays." *Id.* at 14.  But claim 1 recites *the result* of what is displayed *not how* the displaying is optimized.

Claim 1 recites a generic communication device, displays, transceiver, network, and display control circuit.  D.I. 28 at 16.  The rest of the claim recites *the result* of what is displayed and not displayed.  Because the claim fails to recite "how the desired result is achieved," it is unpatentable. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017).

**Step Two:**  Ricoh's alleged "unconventional components" are merely off-the-shelf communication devices, displays, a network, and control unit arranged in a conventional way. D.I. 30 at 15. The specification explains the claimed

"communication device" has a generic CPU, memory, and network I/F (D.I. 24-4 at 3:66-4:19, 4:39-41) for displaying images on the generic first and second "displays" (4:58-59) controlled by a conventional "display control unit" (5:57-58). Ricoh fails to allege anything unique or unconventional about *how* these generic components are arranged. FAC, ¶¶295-326.  Ricoh relies on "image capturing unit 306," "operation receiving unit 304," "arrangement setting unit 314," and "display-device detecting unit 318" which are *not claimed*.  D.I. 30 at 15.

## VI.    '487 PATENT

<u>**Step One**</u>: Ricoh admits the '487 Patent addresses the alleged problem of using multiple applications concurrently on an interactive whiteboard.  D.I. 28 at 7; D.I. 24-1 at 1:35-38; FAC ¶54.  The claimed solution is merely the abstract idea of overlapping information.  Indeed, Ricoh admits that the claims use a whiteboard device with software to "overla[y]" various windows.  D.I. 30 at 7.

Ricoh also admits that the alleged benefit is "enhancing collaboration efficiency" (*id.* at 8); this is not a *technical* improvement, but merely an improvement in user efficiency.  This "makes the [user] faster and more efficient, not the computer. This is not a technical solution to a technical problem." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1090 (Fed. Cir. 2019).  Ricoh's allegation that the patent "eliminate[s] the need to manually switch between devices or applications during collaborative sessions" (D.I. 30 at 7) is implausible because

it directly contradicts the specification. ("The application manager is configured to cause a menu to be displayed…that includes one or more options for switching between [application windows].").  D.I. 24-1 at 1:56-2:2.

Ricoh analogizes its patent to *Data Engine*, but those claims did not "recite the idea of navigating" using "generic method[s]" such as menus and overlapping windows.  *Data Engine v. Google*, 906 F.3d 999, 1008-1009 (Fed. Cir. 2018). Similarly, unlike *Core Wireless,* the claims here are not directed to a "particular manner of [] presenting information." 880 F.3d at 1362.

**Step Two:**  Ricoh *admits* that the patent is intended to work "on devices not natively configured to handle multiple concurrent application windows." D.I. 30 at 8; FAC ¶54.  Meaning, the invention works on conventional devices.  The specification notes the use of "operating systems of varying types" and that the interactive whiteboard appliance" is "not limited to any particular computing architecture." D.I. 24-1 at 4:65-67; 5:14-17.  This is conventional computer hardware to overlap displayed information.

## VII.  '093 PATENT

**Step One:**  Ricoh never responds to Zoom's analysis of claim 1, which recites only "circuitry configured to" perform *results* of receiving, determining, and controlling a display in order to synchronize text and video.  D.I. 28 at 23-24.  And Ricoh never substantively addresses Federal Circuit authority finding *similar*

11

*synchronizing* as abstract. *Id.* at 24. Thus, *Core Wireless* and its reasoning regarding different claims is inapplicable. D.I. 30 at 17-18.

Rather, Ricoh concedes the claim simply requires a "display control apparatus" with circuitry "configured for the elements in the claim"—*the results*. *Id.* at 17. Thus, Ricoh concedes that none of the "event-driven content processing architecture and intelligent multimedia database management" boasted as a computer improvement is in the claim—*no databases are claimed at all*. Ricoh's reference to "changing text data" into some different form is also nowhere in the claims. *Id.*

The FAC's alleged "technical problems" are not technical—they're basic uses of existing computing technology configured for user efficiency so that the user need not "manually move" the video selection bar when selecting a playback region of the video. This allows for "efficient meeting review." FAC, ¶¶380, 385, 399. Thus, Ricoh just claims the abstract result of synchronizing displayed information (i.e., video playback location and corresponding text).

**Step Two:** The specification admits "*conventional* circuit components [are] arranged to perform the recited functions." D.I. 28 at 26, D.I. 24-5 at 51:27-39. Ricoh never responds to this point other than citing nearly 50 FAC paragraphs. D.I. 30 at 24. But allegations of "unique and unconventional circuitry" *are not plausible* in the face of the specification's admissions. *Beteiro*, 104 F.4th at 1359. Thus, Ricoh

12

"fails at step two [because] the intrinsic record establishes that the technology is conventional." *AI Visualize*, 97 F.4th at 1380.

## VIII. '917 PATENT

**Step One:**  Ricoh admits the '917 Patent "creat[es] data paths from external apparatus [sic] through transmission terminals." D.I. 30 at 13.  This is nothing more than forwarding data from one computer to another, an abstract idea.  Ricoh's allegations regarding how this improves on the prior art are not based on an affirmative step in the claimed process, but rather the *lack* of "logging in" the external apparatus.  D.I. 30 at 13; FAC ¶219.  Logging in, and hence *not* logging in, are abstract concepts.  D.I. 28 at 27-28.

The FAC alleges that the patent "reduces the processing burden *on the central server*."  *Id.* at ¶237.  Ricoh now ignores "central server" and claims the patent *generally* "reduc[es] processing load" (D.I. 30 at 13), despite the specification *only* addressing load on the unclaimed "managing system," which *is not claimed*.  D.I. 24-3 at 2:15-21; 29:1-3.  This renders Ricoh's argument irrelevant.  *GoTV,* 166 F.4th at 1061.  Ricoh's references to "data routing through relay apparatus" is just another form of forwarding data.  D.I. 30 at 13.  And unlike *Amdocs*, which claimed "unique" network architecture (851 F.3d at 1303), the claims here reflect prior art architecture.  D.I. 24-3 at 1:52-2:11.

**Step Two:** Ricoh's argument that voluminous FAC citations "tie" the claim to unconventional components is flawed. The "first transmission terminal" "implements" "imaging unit 14a, camera 112, imaging element I/F 113, login requesting unit 13, transmit/receive unit 11, network I/F 111, display data acquiring unit 451, and display transmitting unit 452" that it identifies (D.I. 30 at 13) are not found in any of the claims, and are irrelevant to the eligibility analysis. *GoTV,* 166 F.4th at 1060-61.

## IX.    REPRESENTATIVE CLAIMS

Zoom's Motion explained why certain claims were representative based on their similarities to others in each patent. At that point "the burden shifts to [Ricoh] to present non-frivolous arguments as to why the representative claim cannot fairly be treated as decisive of the eligibility of all claims in the group." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290. Ricoh "does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim. . . ." *Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).[1]

For the '059, '548, and '278 Patents, Ricoh makes no specific arguments at all. Rather, the FAC admits the similarities among each of these patent's claims

---

[1] This is unlike *Diogenes Ltd. v. DraftKings, Inc.*, where defendant asserted that one claim from one patent represented eight different patents and 376 claims. 623 F. Supp. 3d 423, 426-27 (D. Del. 2022).

14

(¶¶185-186, 667, 530).  All other paragraphs are unspecific to any particular claim and/or lack any meaningful argument that a feature is significant.

For the remaining patents, Ricoh failed to argue how any of the similarly abstract features it identifies possess "distinctive significance that would have a material impact on the eligibility analysis." *Mobile Acuity*, 110 F.th at 1290.  Thus, Ricoh "forfeits its right to argue" that the claims are not representative.  *Id.*

## X.    CONCLUSION

For the foregoing reasons, Ricoh's seven patents are ineligible under §101 and Defendant respectfully requests that the Court dismiss this action with prejudice.

15

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mflynn@morrisnichols.com

*Attorneys for Defendant*

OF COUNSEL:

Edward D. Johnson
Cliff A. Maier
MAYER BROWN LLP
Two Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306
(650) 331-2000

Michael A. Molano
MAYER BROWN LLP
575 Market Street, Suite 2500
San Francisco, CA 94105
(415) 874-4230

B. Clayton McCraw
Kaitlyn M. Hunt
Shantelle L. Lafayette
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500

Amanda Steff Bonner
Nicholas H. Ciulla
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600

March 13, 2026

16

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that counsel has complied with the requirements in the Court's Standing Order of 14-point font and Times New Roman typeface. The above supporting brief contains 3247 words.

/s/ Michael J. Flynn
_____
Michael J. Flynn (#5333)

# CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 13, 2026, upon the following in the manner indicated:

John G. Day                                          *VIA ELECTRONIC MAIL*
Andrew C. Mayo
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
*Attorneys for Plaintiff*

Brett C. Govett                                      *VIA ELECTRONIC MAIL*
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
*Attorneys for Plaintiff*

Michael V. Solomita                                  *VIA ELECTRONIC MAIL*
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
*Attorneys for Plaintiff*

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)