# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **RICOH COMPANY, LTD.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**ZOOM COMMUNICATIONS, INC.,**<br><br>    **Defendant.** | **Court No. 1:25-cv-01095-JCG** |

## OPINION AND ORDER

[Denying Defendant's Motion to Dismiss.]

Dated:  May 1, 2026

John G. Day and Andrew C. Mayo, Ashby & Geddes, of Wilmington, DE; Brett C. Govett, Norton Rose Fulbright US LLP, of Dallas, TX; Michael V. Solomita, Norton Rose Fulbright US LLP, of New York, N.Y.  Attorneys for Plaintiff Ricoh Company, Ltd.

Michael J. Flynn, Morris, Nichols, Arsht, & Tunnel LLP, of Wilmington, DE; Edward D. Johnson and Clifford A. Maier, Mayer Brown LLP, of Palo Alto, CA; Michael A. Molano, Mayer Brown LLP, of San Francisco, CA; B. Clayton McCraw, Kaitlyn M. Hunt, and Shantelle L. LaFayette, Mayer Brown LLP, of New York, N.Y.; Amanda Streff Bonner and Nicholas H. Ciulla, Mayer Brown LLP, of Chicago, IL.  Attorneys for Defendant Zoom Communications, Inc.

    Choe-Groves, Judge:  Plaintiff Ricoh Company, Ltd. ("Plaintiff" or "Ricoh")

filed this case against Defendant Zoom Communications, Inc. ("Defendant" or

"Zoom") alleging infringement of U.S. Patent Numbers 10,904,487 (the "'487

Court No. 1:25-cv-01095                                                    Page 2

Patent"); 10,909,059 (the "'059 Patent"); 10,931,917 (the "'917 Patent");

11,256,464 (the "'464 Patent"); 11,289,093 (the "'093 Patent"); 11,516,278 (the

"'278 Patent"); and 11,546,548 (the "'548 Patent") (collectively, the "Asserted

Patents"). First Am. Compl. Patent Infringement ("Am. Compl.") (D.I. 24); see

U.S. Patent Number 10,904,487 ("'487 Patent") (D.I. 24-1); U.S. Patent Number

10,909,059 ("'059 Patent") (D.I. 24-2); U.S. Patent Number 10,931,917 ("'917

Patent") (D.I. 24-3); U.S. Patent Number 11,256,464 ("'464 Patent") (D.I. 24-4);

U.S. Patent Number 11,289,093 ("'093 Patent") (D.I. 24-5); U.S. Patent Number

11,516,278 ("'278 Patent") (D.I. 24-6); U.S. Patent Number 11,546,548 ("'548

Patent") (D.I. 24-7).

Before the Court is Defendant's renewed motion to dismiss for failure to

state a claim. See Def.'s Renewed Mot. Dismiss Pl.'s First Am. Compl. Pursuant

Fed. R. Civ. P. 12(b)(6) 35 U.S.C. § 101 ("Mot. Dismiss") (D.I. 27); Opening Br.

Supp. Def.'s Renewed Mot. Dismiss Compl. ("Def.'s Br.") (D.I. 28).

The Court held oral argument on April 1, 2026. Order (Feb. 20, 2026) (D.I.

29). For the reasons discussed below, Defendant's Motion to Dismiss is denied.

## BACKGROUND

Ricoh is a corporation organized and existing under the laws of Japan, with

its principal place of business in Tokyo, Japan. Am. Compl. at ¶ 1. Founded in

1936, Ricoh has long developed "innovative products in a multitude of technical

Court No. 1:25-cv-01095                                        Page 3

areas." Id. at ¶ 12. Beginning in the early 2000s, Ricoh began to offer technologies such as cloud-based communication and collaboration services, which included videoconferencing, whiteboards, and messaging systems. Id. at ¶ 13. Ricoh contends that its portable and accessible videoconferencing system was new at the time of its creation, and Ricoh developed unique and unconventional technology to ensure that its product was portable, user-friendly, and facilitated enhanced and easy sharing of computer screens. Id. at ¶¶ 15–25.

Ricoh's advances in videoconferencing technology resulted in several patents, including the Asserted Patents. Id. at ¶ 26. Ricoh is the owner of all rights, title, and interest in the Asserted Patents. Id. at ¶¶ 27–33. The '487 Patent, titled "Integration of Videoconferencing with Interactive Electronic Whiteboard Appliances," was issued on January 26, 2021, by the United States Patent and Trademark Office ("USPTO"). '487 Patent. The '059 Patent, titled "Transmission Terminal, Non-Transitory Recording Medium, Transmission Method, and Transmission System," was issued by the USPTO on February 2, 2021. '059 Patent. The '917 Patent, titled "Transmission Terminal, Transmission Method, and Computer-Readable Recording Medium Storing Transmission Program," was issued by the USPTO on February 23, 2021. '917 Patent. The '464 Patent, titled "Communication System, Communication Device, and Computer Program," was issued by the USPTO on February 22, 2022. '464 Patent. The '093 Patent, titled

Court No. 1:25-cv-01095                                                                    Page 4

"Apparatus, System, and Method of Display Control, and Recording Medium,"

was issued by the USPTO on March 29, 2022.  '093 Patent.  The '278 Patent, titled

"Transmission Management System, Transmission System, and Recording

Medium," was issued by the USPTO on November 29, 2022.  '278 Patent.  The

'548 Patent, titled "Transmission Management Apparatus," was issued by the

USPTO on January 3, 2023.  '548 Patent.

Ricoh alleges that Zoom is a Delaware corporation that "develops and

provides cloud-based communication and collaboration products and services,

including video conferencing, whiteboards, and messaging systems."  Am. Compl.

at ¶¶ 2–3.  Ricoh alleges that Zoom was founded in 2011 and launched its first

videoconferencing service in 2013, utilizing the technology that Ricoh developed.

Id. at ¶ 35.  Zoom allegedly operates a platform of products, services, and features

that are accessible through a variety of interfaces.  Id. at ¶ 36.  For example,

Zoom's platform, "Zoom Workplace," encompasses a variety of integrated

products and features, including, but not limited to, the following: Zoom Meetings,

Zoom Team Chat, Zoom Docs, Zoom Whiteboard, Zoom Rooms, Zoom Sessions,

and Zoom Webinars.  Id. at ¶ 37.  Plaintiff alleges that the foregoing products and

services infringe the claims of the Asserted Patents.  Id. at ¶ 40.

Ricoh filed a Complaint in August 2025, alleging infringement of the

Asserted Patents and seeking monetary damages and injunctive relief.  Compl.

Court No. 1:25-cv-01095                                                      Page 5

(D.I. 1).  Zoom filed a motion to dismiss Ricoh's Complaint, arguing that the

Asserted Patents were ineligible for patent protection under 35 U.S.C. § 101.

Def.'s Mot. to Dismiss Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) 35 U.S.C.

§ 101 (D.I. 17).  The First Amended Complaint was filed on January 13, 2026.

Am. Compl.  Zoom filed its renewed Motion to Dismiss, arguing that the Asserted

Patents are ineligible for patent protection under 35 U.S.C. § 101.  Mot. Dismiss;

Def's Br.

## LEGAL STANDARD

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, which

grant the Court jurisdiction over civil actions relating to patents, plant variety

protection, copyrights, and trademarks.  28 U.S.C. §§ 1331, 1338.

Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short

and plain statement of the claim showing that the pleader is entitled to relief.  Fed.

R. Civ. P. 8(a)(1).  If pleadings fail to state a claim, in whole or in part, on which a

court may grant relief, a defendant may seek to dismiss a complaint under Federal

Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal ("Iqbal"),

556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly ("Twombly"), 550

U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." Id. In considering a motion to dismiss, the Court must assume the factual allegations contained in the complaint to be true and draw all reasonable inferences in favor of the non-moving party. Twombly, 550 U.S. at 555–56. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Iqbal, 556 U.S. at 678; see Donald J. Kochan, While Effusive, "Conclusory" is Still Quite Elusive: The Story of a Word, Iqbal, and a Perplexing Lexical Inquiry of Supreme Importance, 73 U. Pitt. L. Rev. 215, 307 (2011) ("'[C]onclusory' sets a standard that requires a certain degree of case-by-case, contextual analysis").

Patent eligibility under 35 U.S.C. § 101 is a question of law, based on underlying facts. See Aatrix Software, Inc. v. Green Shades Software, Inc. ("Aatrix"), 882 F.3d 1121, 1125 (Fed. Cir. 2018); Berkheimer v. HP Inc., 881 F.3d 1360, 1365 (Fed. Cir. 2018). Disputes over eligibility can be resolved on a Rule 12(b)(6) or Rule 12(c) motion "where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." SAP Am., Inc. v. InvestPic, LLC, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (citing Two-Way Media Ltd. v. Comcast Cable Commc'ns,

LLC, 874 F.3d 1329, 1341 (Fed. Cir. 2017); RecogniCorp, LLC v. Nintendo Co.,

855 F.3d 1322, 1328 (Fed. Cir. 2017); FairWarning IP, LLC v. Iatric Sys., Inc.,

839 F.3d 1089, 1098 (Fed. Cir. 2016); Genetic Techs. Ltd. v. Merial L.L.C., 818

F.3d 1369, 1380 (Fed. Cir. 2016); Ultramercial, Inc. v. Hulu, LLC

("Ultramercial"), 772 F.3d 709, 717 (Fed. Cir. 2014)).

## DISCUSSION

Defendant moves to dismiss the claims of the Amended Complaint, which

alleges direct and indirect infringement of the Asserted Patents, arguing that the

Patents are ineligible for patent protection under 35 U.S.C. § 101.  Renewed Mot.

Dismiss; Def.'s Br.

35 U.S.C. § 101 makes patentable "any new and useful process, machine,

manufacture, or composition of matter, or any new and useful improvement

thereof[.]"  35 U.S.C. § 101.  This broad provision has an important exception:

"[l]aws of nature, natural phenomena, and abstract ideas are not patentable."  Alice

Corp. Pty. Ltd. v. CLS Bank Int'l ("Alice"), 573 U.S. 208, 216 (2014).  The

purpose of these exceptions is to protect the "basic tools of scientific and

technological work."  Mayo Collaborative Servs. v. Prometheus Labs., Inc.

("Mayo"), 566 U.S. 66, 71 (2012).  Eligibility "is a question of law" with

"underlying questions of fact."  SAP Am., Inc., 898 F.3d at 1166.

In <u>Alice</u>, the U.S. Supreme Court reaffirmed the two-step framework set forth in <u>Mayo</u>, for distinguishing patents that claim ineligible subject matter from those that claim patent-eligible applications of those concepts.  <u>Alice</u>, 573 U.S. at 217.

In step one, the court must determine whether the claims are drawn to a patent-ineligible concept, such as an abstract idea.  <u>Id.</u>  The court examines the focus of the claim and its character as a whole.  <u>SAP Am., Inc.</u>, 898 F.3d at 1167. Courts must consider whether the focus of the claims is on "the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool."  <u>Finjan, Inc. v. Blue Coat Sys., Inc.</u>, 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quoting <u>Enfish, LLC v. Microsoft Corp.</u> ("<u>Enfish</u>"), 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)).

If the claims are drawn to an abstract idea at step one of the analysis, the court then turns to step two to examine "the elements of each claim both individually and as an ordered combination" to see if there is an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  <u>Alice</u>, 573 U.S. at 217–18 (internal quotations omitted). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea."

Id. at 221 (internal quotations omitted).  Such "additional features" are not enough to constitute an inventive concept if they are "well-understood, routine, conventional activities."  Id. at 225.  To transform an unpatentable concept into a patent-eligible application, "one must do more than simply state the [ineligible concept] while adding the words 'apply it.'"  Mayo, 566 U.S. at 72 (emphasis omitted).

## I.     The '059 Patent (Count II)

### A.     Representative Claim

Defendant contends that the Court should treat Claim 1 as representative of all others for purposes of determining patent eligibility.  Def.'s Br. at 8.  Defendant argues that the remaining '059 Patent claims are directed to the same abstract idea of displaying information and only specify how much information is displayed or what information is displayed.  Id.  Plaintiff disputes Defendant's arguments regarding representativeness.  Pl.'s Answering Br. Opp'n Def.'s Mot. Dismiss ("Pl.'s Resp. Br.") at 5–6, 27–28, (D.I. 30).

A court may limit its analysis of a 35 U.S.C. § 101 challenge to representative claims when the claims at issue are "substantially similar and linked to the same ineligible concept."  Mobile Acuity Ltd. v. Blippar Ltd. ("Mobile Acuity"), 110 F.4th 1280, 1290 (Fed. Cir. 2024) (internal quotation omitted).  Courts may treat a claim as representative "if the patentee does not present any

meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." See Berkheimer, 881 F.3d at 1365 (citations omitted).

The patent challenger asserting that a claim is representative of multiple claims bears the initial burden of making a prima facie showing that the group of claims are substantially similar and linked to the same ineligible concept. Mobile Acuity, 110 F.4th at 1290 (citation omitted). If a prima facie showing is made, the burden shifts to the patent owner to demonstrate why the eligibility of the purported representative claim is not decisive of the eligibility of the other claims within the identified group. Id. If the patent owner cannot make a non-frivolous argument against treating the identified claim as representative, it is precluded from arguing the eligibility of the other claims in the group. Id. (citations omitted).

Claim 1 of the '059 Patent recites:

A transmission terminal performing a video conference with a plurality of transmission terminals, the transmission terminal comprising:
    processor processing circuitry configured to display, on a screen of the transmission terminal, information concerning a total number of transmission terminals participating in the video conference, and display, on the screen of the transmission terminal, respective sets of image data transmitted by transmission terminals participating in the video conference to each other, wherein
    a number of the sets of image data, transmitted by transmission terminals participating in the video conference to each other, to display on the screen of the transmission terminal is smaller than the total number of transmission terminals participating in the video conference.

Court No. 1:25-cv-01095                                              Page 11

'059 Patent at 35:12–29.

As the party challenging the '059 Patent, Defendant has the initial burden to make a prima facie showing that the claims are "substantially similar and linked to the same" allegedly abstract concept of displaying information. Mobile Acuity, 110 F.4th at 1290. Defendant contends that independent Claim 3 is directed to the abstract idea of displaying information, and recites how much information is displayed. Def.'s Br. at 8. Defendant argues that independent Claims 4 and 6 are the method versions of independent Claims 1 and 3, and asserts that dependent Claims 2 and 5 "simply elaborate what is displayed." Id. (emphasis omitted).

Plaintiff contends that Defendant has not carried its burden of demonstrating representativeness. Pl.'s Resp. Br. at 5. Plaintiff does not address representativeness and the '059 Patent specifically, but argues generally that efficiency concerns warrant denial of Defendant's Motion to Dismiss. Id. at 5–6.

The Court observes that the independent Claims are related to a system or methods of transmission terminals performing a videoconference with a plurality of transmission terminals. '059 Patent at 35:36–36:23, 36:28–42. Dependent claims 2 and 5 describe configuring processing circuitry to display information such as names or identification information of transmission terminals performing the videoconference. Id. at 35:30–35, 36:24–27. These functions and methods are substantially similar to the transmission terminal system described in Claim 1.

The Court holds that Defendant has made a prima facie showing that the remaining patent claims are "substantially similar to the same and linked to the same" allegedly abstract concept of displaying information. Mobile Acuity, 110 F.4th at 1290.

The burden now shifts to Plaintiff to present a non-frivolous argument for why the eligibility of Claim 1 cannot be treated as representative of all claims. Id. Plaintiff does not address Defendant's contentions regarding the representativeness of Claim 1, but asserts generally that Defendant failed to make a prima facie showing. Pl.'s Resp. Br. at 5, 27–28. Plaintiff focuses on the Amended Complaint, which alleges that the dependent Claims add a number of unique elements, such as details of the processing circuitry to display information concerning the names or identification of the transmission terminals in the videoconference. Id. at 28; Am. Compl. at ¶ 188. Plaintiff has not articulated a meaningful argument for why the claims should be differentiated from Claim 1 for purposes of determining eligibility. Merely providing examples of the details further elaborated upon does not demonstrate why those claims are not "substantially similar" to Claim 1 or do not relate to the same allegedly patent-ineligible concept such that they require a separate eligibility analysis. See Mobile Acuity, 110 F.4th at 1290. Accordingly, the Court will consider Claim 1 of the '059 Patent as representative of the other '059 Patent claims.

**B.    <u>Alice</u> Step One**

Defendant argues that the '059 Patent is directed to the abstract concept of "identifying the number of meeting attendees despite having photos of fewer than everyone." Def.'s Br. at 5. Defendant avers that Claim 1 does not specify how the claimed result is achieved, and that the display of data as described in the '059 Patent is an abstract idea. <u>Id.</u> at 5–6.

Plaintiff contends that the '059 Patent is directed to a "technical improvement in multi-party video conferencing systems via a sophisticated display management system using unconventional components that coordinates real-time status information with video stream rendering, preventing visual overload, enhancing system efficiency, and maintaining continuous awareness of conference participation without workflow interruption." Pl.'s Resp. Br. at 10. Plaintiff argues that the hardware and software components mentioned in the claims and disclosed in the specification improve the functionality of videoconferencing terminals by enhancing their display management capabilities, which enables them to present video content and participation information simultaneously without mode switching. <u>Id.</u> at 11–12.

Step one of the <u>Alice</u> analysis requires the Court to "determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. <u>Alice</u>, 573 U.S. at 218. The Court considers the claim's "character as a whole."

Enfish, 822 F.3d at 1335.  Eligible patent claims must "focus on a specific means

or method that improves the relevant technology or are instead directed to a result

or effect that itself is the abstract idea and merely invoke generic processes and

machinery."  McRO, Inc. v. Bandai Namco Games Am., Inc., 837 F.3d 1299, 1314

(Fed. Cir. 2016) (citing Enfish, 822 F.3d at 1336).  The claims must do more than

break down and organize the steps that humans regularly go through in their minds

when performing tasks.  See In re Jobin, 811 Fed. App'x. 633, 637 (Fed. Cir.

2020).

The U.S. Court of Appeals for the Federal Circuit ("CAFC") has held

repeatedly that "the steps of obtaining, manipulating, and displaying data,

particularly when claimed at a high level of generality, are abstract concepts."  AI

Visualize, Inc. v. Nuance Comms., Inc., 97 F.4th 1371, 1378 (Fed. Cir. 2024)

(concluding that claims involving storing data, creating image frames, transmitting

image frames, and displaying image frames to a user were directed to the abstract

idea of converting data and using computers to collect, manipulate, and display

data); Hawk Tech. Sys., LLC v. Castle Retail, LLC, 60 F.4th 1349, 1352–57 (Fed.

Cir. 2023) (concluding that claims involving "viewing multiple simultaneously

displayed and stored video images on a remote viewing device of a video

surveillance system" were directed to the abstract idea of storing and displaying

Court No. 1:25-cv-01095                                                    Page 15

video); Elec. Power Grp., LLC v. Alstom S.A. ("Elec. Power Grp."), 830 F.3d

1350, 1353–54 (Fed. Cir. 2016).

Claim 1 of the '059 Patent discloses a processor processing circuitry to

display information concerning the total number of participating transmission

terminals and their respective sets of image data. '059 Patent at 35:12–29. The

claimed processor processing circuitry is configured to function when the number

of sets of image data transmitted for display by the participating transmission

terminals is smaller than the total number of participating transmission terminals.

Id.

The limitations of Claim 1 are similar to those found in a class of cases in

which the CAFC determined that claims focused on "collecting information,

analyzing it, and displaying certain results of the collection and analysis" are

directed to an abstract idea. Elec. Power Grp., 830 F.3d at 1353–54; see e.g., In re

TLI Commc'ns. LLC Patent Litig., 823 F.3d 607, 610–12 (Fed. Cir. 2016)

(concluding that claims reciting recording, transmitting, and storing digital images

were directed to an abstract idea). The focus of Claim 1 is directed to the result of

displaying user images rather than a specific improvement in videoconferencing

technology. This is similar to those concepts that have previously been deemed

abstract.

Plaintiff cites to Core Wireless, in which the CAFC determined that the claims disclosed an improved user interface for electronic devices. Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc. ("Core Wireless"), 880 F.3d 1356, 1362–63 (Fed. Cir. 2018). The CAFC stated that "[a]lthough the generic idea of summarizing information certainly existed prior to the invention, these claims are directed to a particular manner of summarizing and presenting information in electronic devices." Id. The Core Wireless claims are distinguishable from the present case because the CAFC emphasized the level of particularity in the claim language that provided "a specific manner of displaying a limited set of information to the user," and resulted in "a specific improvement" over prior interface systems. Id. at 1363. The language of Claim 1 does not provide a sufficient level of particularity for the Court to conclude that it is similar to those cases in which the CAFC held that the claims were directed to specific, technical improvements in graphical interface systems. See Core Wireless, 880 F.3d at 1362–63; Data Engine Techs. LLC v. Google LLC, 906 F.3d 999, 1007–11 (Fed. Cir. 2018) (finding claims directed to a specific method for navigating through 3D electronic spreadsheets were not abstract); Trading Techs. Int'l., Inc. v. CQG, Inc., 675 Fed. App'x. 1001, 1003–06 (Fed. Cir. 2017) (upholding eligibility determination for claims reciting a method for displaying market information

Court No. 1:25-cv-01095                                           Page 17

because the claims improved a specific problem related to the speed, accuracy, and usability of the interfaces in trading systems).

The Court concludes that Claim 1 is directed to the abstract idea of displaying information on a graphical interface. The Court now turns to Alice step two.

### C.   Alice Step Two

At step two, the Court looks at "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." Alice, 573 U.S. at 217; see also Mayo, 566 U.S. at 73 (explaining that steps of the claim must amount to more than "well-understood, routine, conventional activity.").

Defendant argues that the '059 Patent uses conventional computer technology and discloses no improvement to well-understood components. Def.'s Br. at 6–8. Plaintiff counters that the '059 Patent uses "unconventional components" to enhance the display management capabilities of video conferencing terminals. Pl.'s Resp. Br. at 10, 22–24. Plaintiff contends that the Amended Complaint raises at least a factual dispute as to whether the claim elements and their ordered combination were well-understood, routine, or conventional. Id. at 25–27.

Court No. 1:25-cv-01095                                                    Page 18

In the Amended Complaint, Plaintiff provides extensive factual allegations that "the structure and function claimed by the '059 Patent were not well-understood, routine, or conventional as of the patent's priority date."  Am. Compl. at ¶¶ 181–87; see also id. at ¶¶ 126–59.  Plaintiff's allegations plausibly suggest that the display of participating transmission terminals in a videoconference was accomplished in an unconventional way, and nothing in the '059 Patent contradicts these allegations.

"While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination."  Aatrix, 882 F.3d at 1128. Under Berkheimer, whether the claim elements and their ordered combination is simply well known, routine, and conventional is a question of fact.  Berkheimer, 881 F.3d at 1368.  Under Aatrix, the Court must resolve plausibly alleged factual issues in favor of the patentee at Alice step two.  Aatrix, 882 F.3d at 1127–28.

The Court cannot conclude, as Defendant requests, that the claim elements were well-known, routine, and conventional, thereby failing to confer an inventive concept.  At this stage, viewing the factual allegations in the Amended Complaint as true and drawing all reasonable inferences in favor of non-movant Plaintiff, the Court concludes that Plaintiff has sufficiently pled an inventive concept at Alice step two.  Defendant's motion with respect to the '059 Patent is denied.

Court No. 1:25-cv-01095                                                      Page 19

## II.    The '548 Patent (Count VII)

### A.    Representative Claim

Defendant contends that the Court should treat Claim 1 as representative of

all claims because the remaining claims are directed to the same allegedly abstract

idea of "storing, updating and displaying attendance information."  Def.'s Br. at

12.  Plaintiff disputes Defendant's arguments regarding representativeness.  Pl.'s

Resp. Br. at 5–6, 27–28.

Claim 1 of the '548 Patent recites:

A transmission management apparatus for updating attendance states of a plurality of transmission terminals including a first transmission terminal and a second transmission terminal, the transmission management apparatus comprising:
   a storage medium configured to store first information including a first identification name and a first attendance state associated with the first transmission terminal, and second information including a second identification name and a second attendance state associated with the second transmission terminal; and
   circuitry configured to:
      update the first attendance state associated with the first transmission terminal to a state indicating that the first transmission terminal is attending a video communication, based on attendance request information for video communication received from the first transmission terminal;
      update, when the second transmission terminal attends the video communication, the second attendance state associated with the second transmission terminal to a state indicating that the second transmission terminal is attending the video communication;
      acquire information including an identification name associated with a transmission terminal with which an attendance state is associated and in which the attendance state indicates that

> the transmission terminal is attending the video communication, from the storage medium; and
>
> transmit the acquired information to the first transmission terminal, wherein the acquired information is used in order to
>
> display an identification name list of sites including the first transmission terminal and the second transmission terminal which are attending the video communication during the video communication
>
> wherein the first transmission terminal is configured to display video images from each transmission terminal attending the video communication simultaneously.

'548 Patent at 21:29–67.

As the party challenging the '548 Patent, Defendant has the initial burden to make a prima facie showing that the claims are "substantially similar and linked to the same" allegedly abstract concept of storing, updating, and displaying attendance information. Mobile Acuity, 110 F.4th at 1290. Defendant contends that independent Claims 9–10 and 17 are method, system, and computer-readable versions of Claim 1. Def.'s Br. at 12. Defendant argues that dependent Claims 5 and 21 require transmission with a relaying apparatus that is "unspecified," while dependent Claims 6 and 22 "specify the use of conventional terminals." Id. Defendant asserts that dependent Claims 11 and 15–16 recite the exchange of other information, and dependent Claims 12–14 recite the use of one or more computers. Id. Defendant avers that the remaining dependent Claims merely "describe the information." Id.

Plaintiff contends that Defendant has not carried its burden of demonstrating representativeness. Pl.'s Resp. Br. at 5, 27–28. Plaintiff does not address representativeness and the '548 Patent specifically, but argues generally that efficiency concerns warrant denial of Defendant's Motion to Dismiss. Id.

The Court observes that independent Claim 1 teaches a system involving a transmission management apparatus that allows users of respective transmission terminals to receive information regarding the other transmission terminals attending the videoconference. '548 Patent at 21:29–67. As described by the '548 Patent and the Amended Complaint, similar hardware and software are disclosed in method Claim 9, system Claim 10, and the computer-readable storage medium disclosed in Claim 17. Id. at 22:35–23:47, 24:20–54. The dependent Claims add details to their referenced independent Claim. See Am. Compl. at ¶¶ 667, 671.

The Court holds that Defendant has made a prima facie showing that the remaining patent claims are "substantially similar to the same and linked to the same" allegedly abstract concept. Mobile Acuity, 110 F.4th at 1290.

The burden now shifts to Plaintiff to present a non-frivolous argument for why the eligibility of Claim 1 cannot be treated as representative of all claims. Id. Plaintiff does not address Defendant's contentions regarding the representativeness of Claim 1 specifically, but asserts generally that Defendant failed to make a prima facie showing. Pl.'s Resp. Br. at 5, 27–28. Plaintiff focuses on the Amended

Complaint, which alleges that the dependent Claims add a number of unique elements, such as details of the storage medium, identification name, and transmission terminals. Id. at 28; Am. Compl. at ¶ 671. As discussed earlier, this is insufficient to demonstrate why those claims are not "substantially similar" to Claim 1 or do not relate to the same allegedly patent-ineligible concept such that they require a separate eligibility analysis. See Mobile Acuity, 110 F.4th at 1290. Accordingly, the Court will consider Claim 1 of the '548 Patent as representative of the other '548 Patent claims.

### B.     Alice Step One

Defendant argues that the '548 Patent is directed to the abstract concept of "displaying and updating name and attendance information." Def.'s Br. at 9. Defendant avers that Claim 1 does not recite a particular structure, only the desired results of how to handle attendance information. Id. Defendant contends that an improved user experience does not amount to a technical solution. Id. at 9–10.

Plaintiff contends that the '548 Patent is directed to a "technical improvement in a transmission management system with improved network efficiency, system scalability, video conferencing workflow and enhanced security." Pl.'s Resp. Br. at 20. Plaintiff asserts that the '548 Patent improves computer functionality by "improving network efficiency through reduced bandwidth for participant identification, eliminating redundant state tracking across

multiple transmission terminals through centralized transmission management system, increasing system scalability through decoupling participant identification from video rendering and enhancing security." Id. at 21–22.

At Alice step one, the Court examines whether the claim in question is directed to an improvement in computer technology, as opposed to simply providing the use of a computer to perform "economic or other tasks for which a computer is used in its ordinary capacity." Enfish, 822 F.3d at 1336. A patent may be considered eligible at step one when the patent's specification identifies "the shortcomings and technological challenges" in a particular area, and the claims provide a specific solution to the "'known technological problem.'" Broadband iTV, Inc. v. Amazon.com, Inc., 113 F.4th 1359, 1368 (Fed. Cir. 2024) (quoting Data Engine Techs. LLC, 906 F.3d at 1007–08).

Claim 1 of the '548 Patent recites a transmission management apparatus for updating attendance states of a plurality of transmission terminals, including a first transmission terminal and a second transmission terminal. '548 Patent at 21:29–32. The transmission management apparatus comprises a storage medium configured specifically to store information regarding a user and their attendance date, with the written description disclosing the specific hardware and software required for the transmission management apparatus. Id. at 21:34–39. Claim 1 also recites circuitry configured to perform several specific steps, including

updating the attendance states of the attending transmission terminals, and transmitting the acquired information to a transmission terminal in order to display the information regarding the terminals attending or capable of attending the videoconference.  Id. at 21:40–67.

The specification states that preexisting videoconferencing systems had a problem in that the users of the respective transmission terminals could not "grasp which transmission terminal is attending the conference when the number of transmission terminals attending the conference increases because the division number of the display screen is increased and thus a display area for displaying an image transmitted from each transmission terminal is reduced."  Id. at 1:50–57.  In response to this deficit in the preexisting technology, the '548 Patent aims to provide a transmission management apparatus that enables users at their respective transmission terminals to identify which transmission terminal is attending, regardless of the number of attending transmission terminals.  Id. at 1:58–67.  The '548 Patent notes several benefits of the recited transmission system, such as it enables a user to know the other party attending a videoconference without requiring the user to ask the other party, thereby reducing the total time taken for a videoconference.  Id. at 19:56–59.  The recited transmission system also permits a user to know if an unknown or unregistered party is attending, which permits "the

Court No. 1:25-cv-01095                                                   Page 25

video conference [to] proceed with careful attention to discussion contents." Id. at 19:59–65.

Although the specification identifies shortcomings and technological challenges in traditional videoconferencing systems, the language of Claim 1 does not provide a specific, technical solution as argued by Plaintiff. Rather, the Claim is directed overall to the result of updating and displaying attendance information, which is an abstract idea. See Broadband iTV, Inc., 113 F.4th at 1368. The specification describes the claimed invention as providing improved efficiency in conferencing speed and security, and such benefits can be consistent with a determination of patent eligibility at this stage, provided that there is also more indicating that the claims are directed to an improvement in computer functionality. See Core Wireless, 880 F.3d at 1363 (examining the patent specification's assertions about the benefits of the invention, including the user's improved navigation speed, and concluding that the focused claim language indicated an improvement to computer functionality). As discussed earlier with the previous patent, the Court does not find a sufficient level of particularity in the language of Claim 1 that indicates that the '548 Patent is directed to patent-eligible subject matter.

The Court concludes that Claim 1 is directed to the abstract idea of updating attendance display information. The Court now turns to Alice step two.

### C.    Alice Step Two

Defendant argues that the '548 Patent uses conventional computer technology and discloses no improvement to well-understood components.  Def.'s Br. at 10–12.  Plaintiff counters that the '548 Patent uses unconventional components to provide a "[t]echnical improvement in a transmission management system with improved network efficiency, system scalability, video conferencing workflow and enhanced security."  Pl.'s Resp. Br. 25.  Plaintiff contends that the Amended Complaint raises at least a factual dispute as to whether the claim elements and their ordered combination were well-understood, routine, or conventional.  Id. at 25–27.

In the Amended Complaint, Plaintiff provides extensive factual allegations that "the structure and function claimed by the '548 Patent were not well-understood, routine, or conventional as of the patent's priority date."  Am. Compl. at ¶¶ 663–70; see also id. at ¶¶ 555–662.  Plaintiff's allegations plausibly suggest that the display of participant names and information in a videoconference was accomplished in an unconventional way, and nothing in the '548 Patent contradicts these allegations.

Acknowledging the constraints of Berkheimer and Aatrix, and viewing the factual allegations in the Amended Complaint as true and drawing all reasonable inferences in favor of non-movant Plaintiff, the Court concludes that Plaintiff has

sufficiently pled an inventive concept at <u>Alice</u> step two.  See <u>Berkheimer</u>, 881 F.3d

at 1368; <u>Aatrix</u>, 882 F.3d at 1127–28.  Defendant's motion to dismiss with respect

to the '548 Patent is denied.

## III.    The '278 Patent (Count VI)

### A.      Representative Claim

Defendant contends that the Court should treat Claim 1 as representative of

all claims because the remaining claims are directed to the same allegedly abstract

idea of "updating a name."  Def.'s Br. at 15.  Plaintiff disputes Defendant's

arguments regarding representativeness.  Pl.'s Resp. Br. at 5–6, 27–28.

Claim 1 of the '278 Patent recites:

A management system comprising:
one or memories to store:
>   identification information to be used upon logging in to the management system,
>   first name information which indicates a name associated with the identification information, and
>   meeting information relating to a scheduled meeting and
processing circuitry configured to:
transmit the first name information to a transmission terminal that has logged in to the management system based on the identification information;
receive, from the transmission terminal, second name information which is different from the first name information and is updated name information of the first name information, the second name information being a name displayed in a meeting held based on the meeting information; and
store, in the one or more memories, the second name information in association with the meeting information.

'278 Patent at 25:38–59.

Court No. 1:25-cv-01095                                                   Page 28

Defendant contends that independent Claims 16 and 31 are method and system versions of Claim 1.  Def.'s Br. at 15.  Defendant argues that dependent Claims 4–5, 8–9, 19–20, and 23–24 relate to transmitting information, while dependent Claims 7, 14, 22, 29, and 34 relate to receiving or storing information. Id.  Defendant avers that dependent Claims 15, 27, 30, and 35 recite displaying information, and dependent Claims 11 and 26 recite a conventional computer.  Id. Defendant asserts that all remaining claims describe the information, but no claim changes the patent eligibility analysis.  Id.

The Court observes that independent Claim 1 teaches a system involving a management system with memories and processing circuitry that permits users to create meeting-specific names to be displayed during a videoconference.  '278 Patent at 25:38–59.  As described by the '278 Patent and the Amended Complaint, similar hardware and software are disclosed in method Claim 16 and system claim 31.  Id. at 27:4–21, 28:26–48; Am. Compl. at ¶ 530.  The dependent Claims add details to their referenced independent Claim.  See '278 Patent at 25:60–27:3, 27:22–28:25, 28:49–67.

The Court holds that Defendant has made a prima facie showing of representativeness, and the burden now shifts to Plaintiff.  Mobile Acuity, 110 F.4th at 1290.

Plaintiff does not address Defendant's contentions regarding the representativeness of Claim 1, and asserts generally that Defendant failed to make a prima facie showing. Pl.'s Resp. Br. at 5, 27–28. Plaintiff focuses on the Amended Complaint, which alleges that the dependent Claims add a number of unique elements, such as details of the processor circuitry, first name information, second information, and the meeting information. Id. at 28; Am. Compl. at ¶ 531. As discussed earlier, Plaintiff has not articulated a meaningful argument for why the claims should be differentiated from Claim 1 for purposes of determining eligibility. See Mobile Acuity, 110 F.4th at 1290. Accordingly, the Court will consider Claim 1 of the '278 Patent as representative of the other '278 Patent claims.

## B.     Alice Step One

Defendant argues that the '278 Patent is directed to the abstract idea of "updating a name," and avers that claims that recite the collection, recognition, and storage of data in memory are abstract. Def.'s Br. at 12–13. Defendant avers that Claim 1 is directed to the results of updating name information rather than a structure that accomplishes those results. Id. Defendant contends that an improved user experience does not amount to a technical solution. Id. at 13–14.

Plaintiff contends that the '278 Patent is directed to a "technical improvement in a transmission management system for videoconferencing through

Court No. 1:25-cv-01095                                                      Page 30

a multi-table database architecture that enhances computer operation and a centralized management system that improves network performance."  Pl.'s Resp. Br. at 18.  Plaintiff argues that preexisting systems were limited in their identification capabilities, and the '278 Patent created "a management system with unconventional components so that users can create meeting-specific destination names."  Id.  Plaintiff asserts that computer functionality is improved, specifically in computers with components such as "destination name data managing unit, destination name data reading unit and destination name data transmitting unit along with sophisticated multi-table database architecture that improves data organization and retrieval in the system."  Id. at 19–20.

Claim 1 of the '278 Patent recites a management system with at least one memory that stores identification information, including first name information and meeting information.  '278 Patent at 25:38–45.  The management system also includes processing circuitry that transmits the first name information to a transmission terminal, permits the user to create second destination name data, and stores the second name information in association with the meeting information in one of the memories so that a user can use the customized name during a meeting. Id. at 25:47–59.

The '278 Patent's specification states that preexisting videoconferencing systems used fixed, generic names for destinations, and a user would be required to

select a destination name from a designated list of names.  '278 Patent at 1:40–53.

The list might include geographical names, such as "Japan" or "Tokyo Office," or

terminal names such as "AB terminal," neither of which are intuitive or effective in

certain communication settings.  Id. at 1:54–57.  For a videoconference within the

same organization, team names might be the appropriate and "easy-to-specify"

names.  Id. at 1:64–67.  For a videoconference between different organizations,

company names would be easy-to-specify names.  Id. at 1:67–2:3.  In the

traditional videoconference systems, it was "impossible to use the easy-to-specify

names of the destinations in the communications."  Id. at 2:4–8.

Claim 1 is directed to the type of data collection and display that amounts to

an abstract idea, as held repeatedly by the CAFC.  See e.g., Elec. Power Grp., 830

F.3d at 1353 (acknowledging that claims reciting "collecting information,

analyzing it, and displaying certain results" fall into "a familiar class of claims

'directed to' a patent-ineligible concept"); In re TLI Comms. LLC Patent Litig.,

823 F.3d at 610–12 (concluding that claims reciting recording, transmitting, and

storing digital images were directed to an abstract idea); Dropbox, Inc. v.

Synchronoss Techs., Inc., 815 Fed. App'x. 529, 537 (Fed. Cir. 2020) (agreeing that

claims that format, tag, transmit, and retrieve data are directed to general activities

performed with conventional computer technology).  Although Plaintiff argues that

the invention amounts to a technological solution, the claim language generically

recites the steps of transmitting, receiving, and storing, with no description of the underlying programming or any inventive data structures.

Claim 1, read as a whole and in light of the specification, is directed to a process for gathering, storing, updating, and displaying name information, rather than a particular, technological improvement in the computers that carry out such a function. The claimed process is akin to the human task of updating a name tag, and the use of computers is insufficient to transform such an abstract idea. Credit Acceptance Corp. v. Westlake Servs., 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("[M]ere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology.").

The Court concludes that Claim 1 is directed to the abstract idea of updating name information. The Court now turns to Alice step two.

### C.    Alice Step Two

Defendant argues that the '278 Patent uses conventional computer technology and discloses no improvement to well-understood components. Def.'s Br. at 14–15. Plaintiff counters that the '278 Patent uses unconventional components to provide a "[t]echnical improvement in a transmission management system for video conferencing through a multi-table database architecture that enhances computer operation and centralized management system that improves network performance." Pl.'s Resp. Br. 24. Plaintiff contends that the Amended

Complaint raises at least a factual dispute as to whether the claim elements and their ordered combination were well-understood, routine, or conventional.  Id. at 25–27.

In the Amended Complaint, Plaintiff provides extensive factual allegations that "the structure and function claimed by the '278 Patent were not well-understood, routine, or conventional as of the patent's priority date."  Am. Compl. at ¶¶ 526–30; see also id. at ¶¶ 466–505.  Plaintiff's allegations plausibly suggest that the identification of context-specific names, rather than generic identifiers, was accomplished in an unconventional way and nothing in the '278 Patent contradicts these allegations.

The Court concludes that Plaintiff has sufficiently pled an inventive concept at Alice step two.  See Berkheimer, 881 F.3d at 1368; Aatrix, 882 F.3d at 1127–28. Defendant's motion with respect to the '278 Patent is denied.

## IV.   The '464 Patent (Count IV)

### A.   Representative Claim

Defendant contends that the Court should treat Claim 1 of the '464 Patent as representative for purposes of determining patent eligibility, because "all claims relate to the same abstract idea of communicating images, and controlling their display."  Def.'s Br. at 19.  Plaintiff disputes Defendant's arguments regarding representativeness.  Pl.'s Resp. Br. at 5–6, 27–28.

Court No. 1:25-cv-01095                                         Page 34

Claim 1 of the '464 Patent recites:

A communication device connected to an image capturing apparatus, a first display, and a second display, the communication device comprising:
  a transceiver to:
    transmit data of a first captured image captured by the image capturing apparatus via a network;
    receive data of a second captured image via the network; and
    receive data of a third image that is displayed on a display of another communication device via the network, the third image being different than the first captured image and the second captured image; and
  a display control circuit configured to
    control the first display and the second display; and
    in response to supply of the third image being finished while the first display displays the first captured image and the second captured image and the second display displays the third image, automatically control the first display to display the first captured image and the second captured image and control the second display to display none of the first captured image, the second captured image, and the third image.

'464 Patent at 13:1–24.

Defendant contends that independent Claims 5 and 9 are method and computer-readable medium versions of Claim 1. Def.'s Br. at 19. Defendant argues that dependent Claims 2–3 and 6–7 "merely specify image type," and the remaining claims refer to receiving information. Id.

The Court observes that the independent Claims 5 and 9 are related to a method and a computer-readable medium that bear a substantial similarity to Claim 1. '464 Patent at 13:44–14:2, 14:24–43. The dependent Claims add additional details, such as the type of imaging, but these are not differences substantial

enough to divorce them from the underlying abstract concept advanced by Defendant. Id. at 13:25–43, 14:3–23, 14:44–59.

Defendant has made a prima facie showing for the representativeness of Claim 1, and the burden now shifts to Plaintiff. Mobile Acuity, 110 F.4th at 1290.

Plaintiff asserts generally that Defendant failed to make a prima facie showing. Pl.'s Resp. Br. at 5. As a select example of the material differences between Claims, Plaintiff asserts that dependent Claim 4 requires an "operation receiving circuit" that receives instructions to switch between specific display schemes. Id. at 27–28. Plaintiff also focuses on the Amended Complaint, which alleges that the dependent Claims add a number of unique elements, such as details to the third image of Claim 1, including how the image is created. Id. at 28; Am. Compl. at ¶ 351. Plaintiff has not articulated a meaningful argument for why the remaining claims do not relate to the same allegedly patent-ineligible concept such that they require a separate eligibility analysis. See Mobile Acuity, 110 F.4th at 1290. Accordingly, the Court will consider Claim 1 of the '464 Patent as representative of the remaining '464 Patent claims.

## B.   Alice Step One

Defendant argues that the '464 Patent is directed to the abstract idea of "controlling what images are displayed on multiple monitors." Def.'s Br. at 16. Defendant avers that Claim 1 is results-oriented, and merely recites transmitting

and receiving images and then choosing which of two monitors displays the images.  Id.

Plaintiff contends that the '464 Patent addresses a significant technical limitation by "performing image stream processing more efficiently and increasing the visibility of the images displayed."  Pl.'s Resp. Br. at 14.  Plaintiff argues that the '464 Patent specifies how to accomplish such results by using unconventional components that allow images to appear on multiple displays, or on multiple display areas of a single device, without requiring user input.  Id. at 15.

Claim 1 of the '464 Patent recites a communication device that comprises a transceiver and circuitry configured to control images appearing on multiple displays in a predetermined arrangement.  '464 Patent at 13:1–24.

The specification explains that in preexisting videoconferencing systems, there was a need for "a communication system, a communication device, and a computer program that increase the visibility of an image displayed on a display device."  '464 Patent at 1:40–43.  In response, the claimed invention controls display schemes such that the visibility of images displayed is improved and "it is possible to save the operation performed by the user and to perform stream processing of a supplied image more efficiently."  Id. at 8:21–23, 9:56–57.

Claim 1 is drawn to the abstract idea of controlling the display of image data on dual displays.  The claim language recites the transmitting, receiving, and

display of image data.  As discussed earlier, the concept of data collection, recognition, analysis, and display are well-known abstract functions, and the language of the claim does not provide a description of the underlying programming or focus on a particular improvement in computer technology that would permit this Court to conclude that the claim is directed to patent-eligible subject-matter similar to a line of CAFC cases involving technical improvements to graphical interfaces.  See e.g., Core Wireless, 880 F.3d at 1361–63 (finding eligibility at step one for claims that disclosed improved display interfaces, particularly for devices with small screens); Data Engine Techs. LLC, 906 F.3d at 1007–11 (finding claims directed to a method for navigating through 3D electronic spreadsheets were not abstract); Trading Techs. Int., Inc., 675 Fed. App'x. at 1004–06 (upholding eligibility determination for claims reciting a method for displaying market information because the claims improved a specific problem related to the speed, accuracy, and usability of the interfaces in trading systems). The CAFC has distinguished such cases in instances such as this one, when "no specific manner of performing the abstract idea is recited in the[] claims." Chamberlain Grp., Inc. v. Techtronic Indus. Co., 935 F.3d 1341, 1348 (Fed. Cir. 2019) (distinguishing Core Wireless).

The '464 Patent aims to improve image visibility by controlling the display of image data across two displays.  This is similar to cases in which the CAFC has

Court No. 1:25-cv-01095                                                  Page 38

addressed display control and described it as "providing someone an additional set of information without disrupting the ongoing provision of an initial set of information," which is akin to a television station's use of a ticker along the bottom of a screen or the nontechnical human activity of passing someone a note during a meeting.  Interval Licensing LLC v. AOL, Inc., 896 F.3d 1335, 1344 (Fed. Cir. 2018) (holding that a claimed "attention manager" amounted to "a desired result (non-interfering display of two information sets) without any limitation on how to produce that result."); see also Elec. Power Grp., 830 F.3d at 1155–56 (noting that claim requirement of "'displaying concurrent visualization' of two or more types of information" was insufficient to confer patent eligibility).

The Court concludes that Claim 1 is directed to the abstract idea of controlling image data on dual displays.  The Court now turns to Alice step two.

## C.    Alice Step Two

Defendant argues that the '464 Patent uses conventional computer technology and discloses no improvement to well-understood components.  Def.'s Br. at 17–19.  Plaintiff counters that the '464 Patent uses unconventional components to provide a "[t]echnical improvement in computer functionality by automatically switching the display schemes on two displays to highlight content from the image supply devices efficiently, without user input, thereby reducing configuration burden, enhancing system functionality and improving visibility of

shared content across multiple displays." Pl.'s Resp. Br. 24. Plaintiff contends that the Amended Complaint raises at least a factual dispute as to whether the claim elements and their ordered combination were well-understood, routine, or conventional. Id. at 25–27.

In the Amended Complaint, Plaintiff provides extensive factual allegations that "the structure and function claimed by the '464 Patent were not well-understood, routine, or conventional as of the patent's priority date." Am. Compl. at ¶¶ 342–50; see also id. at ¶¶ 294–326. Plaintiff's allegations plausibly suggest that the tracking of displayed images and automatic switching of display schemes across dual displays was accomplished in an unconventional way, and nothing in the '464 Patent contradicts these allegations.

Accordingly, the Court concludes that Plaintiff has sufficiently pled an inventive concept at Alice step two. See Berkheimer, 881 F.3d at 1368; Aatrix, 882 F.3d at 1127–28. Defendant's motion with respect to the '464 Patent is denied.

## V.    The '487 Patent (Count I)

### A.    Representative Claim

Defendant contends that the Court should treat Claim 15 of the '487 Patent as representative for purposes of determining patent eligibility, because "all claims are directed to the same abstract idea of overlaying displayed items." Def.'s Br. at

Court No. 1:25-cv-01095                                    Page 40

23. Plaintiff disputes Defendant's arguments regarding representativeness. Pl.'s

Resp. Br. at 5–6, 27–28.

> Claim 15 of the '487 Patent recites:
>
> A computer-implemented method comprising:
> > An interactive whiteboard session window, including at least an interactive whiteboard session content area, to be displayed on a display of a whiteboard device, wherein a selection menu to receive an instruction for starting a video conference session is overlaid on the interactive whiteboard session window; and
> > after receiving the instruction for starting the video conference session via the selection menu overlaid on the interactive whiteboard session window, a videoconference window to be overlaid on the interactive whiteboard session window.

'487 Patent at 12:30–41.

Defendant contends that independent Claims 1 and 8 are apparatus and

computer-readable medium versions of the Claim 15. Def.'s Br. at 23. Defendant

argues that dependent Claims 2, 9, and 16 describe what is displayed, while

dependent Claims 3, 10, and 17 add a conventional menu. Id. Defendant avers

that dependent Claims 4, 11, and 18 address the location of the videoconference

window, and dependent Claims 5, 12, and 19 state which overlapped item is on

top. Id. Defendant contends that dependent Claims 6, 13, and 20 specify

transmission of information and the remaining dependent Claims require "display

of conventional context-sensitive menus." Id.

The Court agrees that the independent and dependent Claims do not have a

distinctive significance from Claim 15 that is sufficient for them to stand apart

Court No. 1:25-cv-01095                                    Page 41

from the underlying concept argued by Defendant.  '487 Patent at 10:63–12:66.

The Court holds that Defendant has made a prima facie showing of

representativeness, and the burden now shifts to Plaintiff.  Mobile Acuity, 110

F.4th at 1290.

Plaintiff asserts generally that Defendant failed to make a prima facie

showing.  Pl.'s Resp. Br. at 5, 27–28.  As a select example of the material

differences between Claims, Plaintiff asserts that dependent Claims 6, 13, and 20

do not merely specify transmission of information, but require sharing an

interactive whiteboard session with external client devices by triggering a

collaboration library on the whiteboard device.  Id. at 27–28.  Plaintiff also focuses

on the Amended Complaint, which alleges that the dependent Claims add a number

of unique elements, such as details of the videoconferencing window and the

selection menu of independent Claim 1.  Id. at 28; Am. Compl. at ¶ 104.  As held

with the patents discussed previously, Plaintiff's arguments are insufficient to

explain why the remaining claims should be differentiated from Claim 15 for

purposes of determining eligibility.  Accordingly, the Court will consider Claim 15

of the '487 Patent as representative of the other '487 Patent claims.

### B.    Alice Step One

Defendant argues that the '487 Patent is directed to the abstract idea of

"displaying overlapped information" and recites conventional computer

Court No. 1:25-cv-01095                                              Page 42

components.  Def.'s Br. at 20.  Defendant avers that Claim 15 claims only the

result of overlaying conventional graphical user interface elements, which is an

ineligible abstract idea.  Id. at 20–21.

Plaintiff contends that the '487 Patent is directed to a "technical

improvement in how interactive electronic whiteboard devices operate

concurrently with videoconferencing."  Pl.'s Resp. Br. at 6.  Plaintiff argues that

preexisting systems were unable to use other applications on interactive

whiteboard appliances while sharing the electronic whiteboard, and the '487 Patent

improves computer functionality by allowing a whiteboard device to share content

during a videoconference.  Id. at 7–8.

The '487 Patent explains that interactive electronic whiteboard appliances

allow users to view and make changes to electronic information and permit other

devices to receive such changes.  '487 Patent at 1:33–35.  In preexisting

videoconferencing systems, there was a limited capability to use other applications

on interactive whiteboard appliances while sharing an electronic whiteboard, and

the '487 Patent was intended to respond to challenges in integrating

videoconferencing with interactive whiteboard appliances.  Id. at 1:22–23, 1:35–

38.  Specifically, the claimed approach "may be implemented on interactive

whiteboard appliances that are not natively configured to allow users to select

and/or switch control between an interactive whiteboard session window and a videoconferencing session window." Id. at 3:12–16.

Claim 15 purports to address problems in conventional videoconferencing systems by disclosing a method involving an interactive whiteboard session with a display interface configured to enable users to navigate between an interactive whiteboard session window and a videoconferencing session window. '487 Patent at 12:30–41.

The character of Claim 15, when considered in light of the specification, is directed to an abstract idea for many of the same reasons contemplated earlier with the Asserted Patents discussed previously. "Identifying, analyzing, and presenting certain data to a user is not an improvement specific to computing." Int'l Bus. Machs. Corp. v. Zillow Grp., Inc., 50 F.4th 1371, 1378 (Fed. Cir. 2022). The language of Claim 15 describes the result of overlaying a videoconference window on top of an interactive whiteboard session window, with nothing further to indicate that the overlaying of such interface windows amounts to a specific improvement in computer technology. See also Interval Licensing LLC, 896 F.3d at 1344; Elec. Power Grp., 830 F.3d at 1353–54; Int'l Bus. Machs. Corp., 50 F.4th at 1377–78 (holding that claims for updating a map and a co-displayed list of items on the map were directed to the abstract idea of "limiting and coordinating the display of information based on a user selection."). Accordingly, Plaintiff has not

persuaded the Court that the claim is directed to a technical improvement in the capability of videoconferencing systems as a whole.

The Court concludes that Claim 15 is directed to the abstract idea of displaying overlapped information. The Court now turns to Alice step two.

### C.    Alice Step Two

Defendant argues that the '487 Patent uses conventional computer technology and discloses no improvement to well-understood components. Def.'s Br. at 22. Plaintiff counters that the '487 Patent uses unconventional components to provide a "[t]echnical improvement in computer functionality by enabling concurrent integration of an interactive whiteboard with videoconferencing session windows and managing shared whiteboard content in the video conference environment." Pl.'s Resp. Br. 23. Plaintiff contends that the Amended Complaint raises at least a factual dispute as to whether the claim elements and their ordered combination were well-understood, routine, or conventional. Id. at 25–27.

In the Amended Complaint, Plaintiff provides extensive factual allegations that "the structure and function claimed by the '487 Patent were not well-understood, routine, or conventional as of the patent's priority date." Am. Compl. at ¶¶ 95–103; see also id. at ¶¶ 52–94. Plaintiff's allegations plausibly suggest that the integration and management of videoconferencing sessions and interactive

whiteboard appliances were accomplished in an unconventional way, and nothing in the '464 Patent contradicts these allegations.

The Court concludes that Plaintiff has sufficiently pled an inventive concept at Alice step two. See Berkheimer, 881 F.3d at 1368; Aatrix, 882 F.3d at 1127–28. Defendant's motion with respect to the '487 Patent is denied.

## VI.    The '093 Patent (Count V)

### A.    Representative Claim

Defendant contends that the Court should treat Claim 1 of the '093 Patent as representative for purposes of determining patent eligibility, because "all claims recite the abstract idea of synchronized displayed information." Def.'s Br at 26. Plaintiff disputes Defendant's arguments regarding representativeness. Pl.'s Resp. Br. at 5–6, 27–28.

Claim 1 of the '093 Patent recites:

A display control apparatus, comprising:
    circuitry configured to:
        receive text data converted from voice data, and time information
            from a server that manages content data generated during an
            event;
        control a display to:
            display the text data in an order according to the time
                information, and
            display a graphical control region, at a first display
                location, that sets playback position in a total
                playback time of the voice data;
        receive selection of first text data from the text data
            being displayed;
        determine, by referring to the time information, a

Court No. 1:25-cv-01095                                              Page 46

> second display location which is different from the
> first display location, the second display location
> corresponding to the time information of the first text
> data; and
>    control the display to display the graphical control
>       region at the second display location.

'093 Patent at 51:55–52:7.

Defendant contends that Claims 10, 17, and 22 are system, method, and computer-readable versions of Claim 1.  Def.'s Br. at 26.  Defendant argues that: (1) Claims 2 and 18 describe the information; (2) Claims 3 and 4 recite conventional GUI elements; (3) Claims 5, 11, 13, 16–17, and 19–20 recite receiving or displaying information; (4) Claims 6, 12, 14, and 22 recite communicating additional information; (5) Claim 7 specifies that a single sentence is selected; (6) Claims 8–9 recite conventional memory and unspecified circuitry for storing or transmitting information; and (7) Claim 15 recites conventional computing hardware.  Id.

The independent and dependent Claims do not have a distinctive significance from Claim 1 that is sufficient for them to stand apart from the underlying concept argued by Defendant.  '093 Patent at 51:55–54:64.  The Court holds that Defendant has made a prima facie showing of representativeness, and the burden now shifts to Plaintiff.  Mobile Acuity, 110 F.4th at 1290.

Plaintiff asserts that Defendant failed to make a prima facie showing.  Pl.'s Resp. Br. at 5, 27–28.  As a select example of the material differences between

Claims, Plaintiff asserts that Claims 6, 12, 14, and 22 require specific steps to obtain "a content processing identifier" and determine the "second display location of the graphical control region" rather than merely "communicating additional information." Id. at 28. Plaintiff also focuses on the Amended Complaint, which alleges that the dependent Claims add a number of unique elements, such as circuitry, graphical control region, display control apparatus, and apparatus of Claim 1 as well as adding other hardware and circuitry. Id.; Am. Compl. at ¶ 432. Plaintiff has not articulated a meaningful argument for why the claims should be differentiated from Claim 1 for purposes of determining eligibility. See Mobile Acuity, 110 F.4th at 1290.

Accordingly, the Court will consider Claim 1 of the '093 Patent as representative of the remaining '093 Patent claims.

**B.      Alice Step One**

Defendant argues that the '093 Patent is directed to the abstract idea of synchronizing displayed information such as video playback location and corresponding text. Def.'s Br. at 23. Defendant avers that Claim 1 is results-oriented, and is directed to a "display control apparatus" with "circuitry" that receives text data converted from voice data, displays this text, and allows the user to update a video playback indicator by selecting corresponding text. Id.

Plaintiff contends that the '093 claims an improvement in computer operation by "creating efficient data associations between voice recordings and their text transcriptions through event-driven content processing architecture and intelligent multimedia database management."  Pl.'s Resp. Br. at 16.  Plaintiff argues that the '093 Patent identifies "significant technical challenges in meeting-minutes generation systems, including when correlating recorded voice data and timestamped text data."  Id.  Plaintiff avers that the '093 Patent solves these problems by providing "an improved data architecture supporting multimedia content with temporal associations that enable intelligent supporting cross-modal navigation."  Id. at 17.

Claim 1 of the '093 Patent recites the abstract functions of receiving and displaying data to enable a user to select a video playback location from a text transcription.  '093 Patent at 51:55–52:7.  This kind of information tagging is "directed to the abstract idea of denoting where certain content is found" which is "no different than placing a bookmark in a book to indicate where an interesting passage begins[.]"  MG Freesites Ltd. v. ScorpCast LLC, 651 F. Supp. 3d 744, 752 (D. Del. 2023) (holding that a patent for video tagging that enabled users to quickly navigate to specific portions of video content was directed to the abstract idea of tagging information for ease of reference).  "Bookmarking information for another to find, such as annotating a particular passage of a book, is 'longstanding

conduct that existed well before the advent of computers and the Internet.'" Id. at 753 (quoting Intell. Ventures I LLC v. Erie Indemnity Co., 850 F.3d 1315, 1327 (Fed. Cir. 2017)).

The specification explains that in preexisting videoconferencing meeting minutes generating systems, it had "been cumbersome for the user to start playing the recorded voice data from a specific point of time that the user desires." '093 Patent at 4:51–53. In response, the claimed invention "assists the user in finding a playback start time of voice data recorded during an event." Id. at 4:59–62. The '093 Patent accomplishes this by employing an apparatus, system, and method of display control which assists the user in finding a playback start time of voice data recorded during an event. Id.

Plaintiff argues that Defendant oversimplifies the claim by ignoring the "event-driven content processing architecture and intelligent multimedia database management." Pl.'s Resp. Br. at 16–17. The Alice step one inquiry, however, considers "the focus of the claims," or "their character as a whole," while "the second-stage inquiry (where reached) . . . look[s] more precisely at what the claim elements add." Elec. Power Grp., 830 F.3d at 1353 (citations omitted); see also Chamberlain Grp., Inc., 935 F.3d at 1348 ("Without more, the mere physical nature of [the plaintiff]'s claim elements (e.g., controller, interface, and wireless data transmitter) is not enough to save the claims from abstractness[.]").

Court No. 1:25-cv-01095                                                    Page 50

The language of Claim 1, read in light of the specification, indicates that the character of the claim as a whole is directed to the abstract idea of tagging information for ease of reference.  The focus is not on a specific and inventive architecture that improves computer functionality, as Plaintiff contends.  Although the specification identifies deficiencies in the user experience involving meeting minutes generation systems, "improving a user's experience while using a computer application is not, without more, sufficient to render the claims directed to an improvement in computer functionality."  Customedia Techs., LLC v. Dish Network Corp., 951 F.3d 1359, 1365 (Fed. Cir. 2020).

The Court holds that Claim 1 is directed to the abstract idea of tagging information for ease of reference.  The Court now turns to Alice step two.

## C.    Alice Step Two

Defendant argues that the '093 Patent uses conventional computer technology and discloses no improvement to well-understood components.  Def.'s Br. at 25–26.  Plaintiff counters that the '093 Patent uses unconventional components to provide a "[t]echnical improvement in in computer functionality by creating efficient data associations between voice recordings of a recorded media event and their text transcriptions through event-driven content processing architecture, intuitive user interface and intelligent multimedia database management."  Pl.'s Resp. Br. 24.  Plaintiff contends that the Amended Complaint

raises at least a factual dispute as to whether the claim elements and their ordered combination were well-understood, routine, or conventional.  Id. at 25–27.

In the Amended Complaint, Plaintiff provides extensive factual allegations that "the structure and function claimed by the '093 Patent were not well-understood, routine, or conventional as of the patent's priority date."  Am. Compl. at ¶¶ 424–31; see also id. at ¶¶ 381–423.  Plaintiff's allegations plausibly suggest that the claimed meeting minutes generation system was achieved in an unconventional way, and nothing in the '093 Patent contradicts these allegations.

The Court concludes that Plaintiff has sufficiently pled an inventive concept at Alice step two.  See Berkheimer, 881 F.3d at 1368; Aatrix, 882 F.3d at 1127–28.  Defendant's motion with respect to the '093 Patent is denied.

## VII.   The '917 Patent (Count III)

### A.     Representative Claim

Defendant contends that the Court should treat Claim 1 of the '917 Patent as representative for purposes of determining patent eligibility, because "all claims recite the abstract idea of forwarding transmitted video."  Def.'s Br at 29–30.  Plaintiff disputes Defendant's arguments regarding representativeness.  Pl.'s Resp. Br. at 5–6, 27–28.

Claim 1 of the '917 Patent recites:

A first transmission terminal comprising:

> processing circuitry configured to
>> obtain first video data capture by a camera,
>> log into a management system by transmitting a login request to the management system,
>> establish a communication session for transmitting the first video data to a second transmission terminal that has logged into the management system,
>> transmit the first video data using the established communication session,
>> when an external input apparatus that has not logged into the management system is connected with the first transmission terminal during the first video data being displayed on a display screen of the second transmission terminal, receive, from the external input apparatus, second video data obtained in the external input apparatus, and
>> in response to receiving the second video data, transmit the first video data and the second video data for sharing with the second transmission terminal using the established communication session.

'917 Patent at 31:63–32:16.

Defendant contends that: (1) Claims 8 and 15 are method and computer-readable versions Claim 1; (2) Claims 2 and 9 add an undescribed relay apparatus; (3) Claims 3 and 10 add abstract limitations relating to receiving information and choosing a relay apparatus; (4) Claims 4 and 11 recite abstract steps of receiving information and executing unspecified software; and (5) Claims 7 and 15 recite "establish[ing] the communication session." Def.'s Br. at 29–30. Defendant avers the remaining claims of the '917 Patent recite transmitting other information. Id. at 30.

Court No. 1:25-cv-01095                                              Page 53

The Court observes that the independent and dependent claims bear a similarity to Claim 1 and holds that Defendant has made a prima facie showing of representativeness.  The burden now shifts to Plaintiff.  Mobile Acuity, 110 F.4th at 1290.

Plaintiff asserts that Defendant failed to make a prima facie showing.  Pl.'s Resp. Br. at 5, 27–28.  As a select example of the material differences between claims, Plaintiff asserts that Claims 6 and 13 require transmitting a specific "program" for obtaining data to the external input apparatus if the "program" is not installed in the external input apparatus, rather than "other information" as alleged by Defendant.  Id. at 27–28.  Plaintiff also focuses on the Amended Complaint, which alleges that the dependent claims add a number of other significant unique and unconventional elements.  Id.; Am. Compl. at ¶ 264.  As an example, Plaintiff points to dependent Claims 2–8 which "add a relay apparatus and details of the processing circuitry to [C]laim 1."  Am. Compl. at ¶ 264.

As discussed earlier with the previous patent, Plaintiff has failed to rebut Defendant's arguments for representativeness.  See Mobile Acuity, 110 F.4th at 1290.  Accordingly, the Court will consider Claim 1 of the '917 Patent as representative of the other '917 Patent claims.

**B.**     **<u>Alice</u> Step One**

Defendant argues that the '917 Patent is directed to the abstract idea of forwarding data from one computer to another.  Def.'s Br. at 27.  Defendant contends that Claim 1 uses a generic computer to log into a videoconference system, connect an external device to it, and transmit video data from that external device, leading to the abstract result of forwarding data from one computer to another.  <u>Id.</u>

Plaintiff contends that the '917 Patent claims an improvement in videoconferencing systems by creating data paths from an external apparatus through transmission terminals without logging the external input apparatus into a management system.  Pl.'s Resp. Br. at 13.  Plaintiff avers that this improvement reduces processing load, enables external device content sharing without central system registration, distributes data routing through relay apparatus, and eliminates authentication for auxiliary devices.  <u>Id.</u>  Plaintiff argues that the '917 Patent solved these problems by using "unconventional components to allow a transmission terminal to transmit and/or receive display data shared by a separate external computer device during a videoconference."  <u>Id.</u>

Claim 1 of the '917 Patent aims to enable display data stored in an external computer device to be transmitted without logging the external computer device into a transmission managing system.  '917 Patent at 31:63–32:16.

Court No. 1:25-cv-01095                                                    Page 55

The specification explains that in preexisting videoconferencing systems, "when the material (presentation content) is managed in a computer other than the transmission terminal from which the video or audio data is transmitted during the conference, the computer needs to be placed under the management of a transmission managing system," resulting in an increase of the processing load of the transmission managing system.  '917 Patent at 2:4–10.

Although the specification describes a technical limitation in the functioning of computers, the character of Claim 1 is not focused on a specific, technical improvement in computer functionality, but instead uses results-based language to describe a system directed to the abstract idea of transmitting data from one device to another.  See e.g., Cellspin Soft, Inc. v. Fitbit, Inc. ("Cellspin"), 927 F.3d 1306, 1315–16 (Fed. Cir. 2019) (holding that patents for pairing a digital data capture device with a mobile device for transferring and publishing data were abstract).  As the CAFC noted in Cellspin, "similar claims reciting the collection, transfer and publishing of data are directed to an abstract idea," and such cases "compel the conclusion that the asserted claims are directed to an abstract idea as well."  Id. at 1315.  See also Customedia Techs, LLC, 951 F.3d at 1365 (finding that claims directed to the abstract idea of reserving memory to ensure storage space for advertising data were abstract and insufficient to amount to improving the functionality of the computer).

The Court holds that Claim 1 is directed to the abstract idea of transmitting data from one device to another.  The Court now turns to <u>Alice</u> step two.

### C.     <u>Alice</u> Step Two

Defendant argues that the '917 Patent uses conventional computer technology and discloses no improvement to well-understood components.  Def.'s Br. at 29.  Plaintiff counters that the '917 Patent uses unconventional components to provide a "[t]echnical improvement in in computer functionality by enabling display data stored in an external apparatus to be transferred to a transmission terminal without logging the external apparatus into a management system."  Pl.'s Resp. Br. 24.  Plaintiff contends that the Amended Complaint raises at least a factual dispute as to whether the claim elements and their ordered combination were well-understood, routine, or conventional.  <u>Id.</u> at 25–27.

In the Amended Complaint, Plaintiff provides extensive factual allegations that "the structure and function claimed by the '917 Patent were not well-understood, routine, or conventional as of the patent's priority date."  Am. Compl. at ¶¶ 259–63; <u>see also id.</u> at ¶¶ 219–58.  Plaintiff's allegations plausibly suggest that the transmission of display data stored in an external computer device without logging the external computing device into a transmission managing system was accomplished in an unconventional way, and nothing in the '917 Patent contradicts these allegations.

Court No. 1:25-cv-01095                                                    Page 57

The Court concludes that Plaintiff has sufficiently pled an inventive concept at Alice step two.  See Berkheimer, 881 F.3d at 1368; Aatrix, 882 F.3d at 1127–28. Defendant's motion with respect to the '917 Patent is denied.

## CONCLUSION

Upon consideration of Defendant's Motion to Dismiss (D.I. 27), and all other papers and proceedings in this action, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (D.I. 27) is denied; and it is further

**ORDERED** that on or before June 1, 2026 , the Parties shall meet and confer and file a joint proposed Scheduling Order in this action consistent with the applicable form Scheduling Order of Judge Connolly, which is posted at https://www.ded.uscourts.gov/ (See Chambers, Chief Judge Colm F. Connolly), along with a cover letter requesting the Court to enter the joint proposed Scheduling Order (if there are no disputes or other issues concerning scheduling that the Court needs to address) or to schedule the Scheduling Conference.  If the Parties are unable to agree upon a proposed scheduling order, each Party shall file a proposed scheduling order by the deadline and contact my Case Manager, Steve Taronji, by telephone at (212) 264-1611 or via e-mail at steve_taronji@cit.uscourts.gov, to arrange a conference with the Court.

Court No. 1:25-cv-01095                                           Page 58

IT IS SO ORDERED this 1st day of May, 2026.


                                                /s/ Jennifer Choe-Groves
                                                     Jennifer Choe-Groves
                                            U.S. District Court Judge[*]

---

[*]Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.