**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **RICOH COMPANY, LTD.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ZOOM COMMUNICATIONS, INC. F/K/A ZOOM VIDEO COMMUNICATIONS, INC.,**<br><br>**Defendant.** | **Court No. 1:25-cv-01095-JCG** |

**OPINION AND ORDER**

[Denying Defendant's Motion to Transfer.]

Dated: October 15, 2026

John G. Day and Andrew C. Mayo, Ashby & Geddes, of Wilmington, DE; Brett C. Govett, Norton Rose Fulbright US LLP, of Dallas, TX; Michael V. Solomita, Norton Rose Fulbright US LLP, of New York, N.Y. Attorneys for Plaintiff Ricoh Company, Ltd.

Michael J. Flynn, Morris, Nichols, Arsht & Tunnell P, of Wilmington, DE; Edward D. Johnson and Cliff A. Maier, Mayer Brown LLP, of Palo Alto, CA; Michael A. Molano, Mayer Brown LLP, of San Franscisco, CA; B. Clayton McCraw, Kaitlyn M. Hunt, and Shantelle L. Lafayette, Mayer Brown LLP, of New York, N.Y.; Amanda Steff Bonner and Nicholas H. Ciulla, Mayer Brown LLP, of Chicago, IL. Attorneys for Defendant Zoom Communications, Inc. f/k/a Zoom Video Communications, Inc.

Choe-Groves, Judge: Plaintiff Ricoh Company, Ltd. ("Ricoh" or "Plaintiff") filed this case against Defendant Zoom Communications, Inc. f/k/a Zoom Video

Communications, Inc. ("Zoom" or "Defendant") alleging infringement of U.S. Patent Numbers 10,904,487 (the "'487 Patent"), 10,909,059 (the "'059 Patent"), 10,931,917 (the "'917 Patent"), 11,256,464 (the "'464 Patent"), 11,289,093 (the "'093 Patent"), 11,516,278 (the "'278 Patent"), and 11,546,548 (the "'548 Patent") (collectively, the "Asserted Patents"). Compl. (D.I. 1); First Am. Compl. Patent Infringement ("Am. Compl.") (D.I. 24); see U.S. Patent Number 10,904,487 ("'487 Patent") (D.I. 24-1); U.S. Patent Number 10,909,059 ("'059 Patent") (D.I. 24-2); U.S. Patent Number 10,931,917 ("'917 Patent") (D.I. 24-3); U.S. Patent Number 11,256,464 ("'464 Patent") (D.I. 24-4); U.S. Patent Number 11,289,093 ("'093 Patent") (D.I. 24-5); U.S. Patent Number 11,516,278 ("'278 Patent") (D.I. 24-6); U.S. Patent Number 11,546,548 ("'548 Patent") (D.I. 24-7).

Before the Court is Defendant's Motion to Transfer under 28 U.S.C. § 1404 ("Def.'s Mot.") (D.I. 44). See Defendant's Opening Brief in Support of Its Motion to Transfer Under 28 U.S.C. § 1404 ("Def.'s Br.") (D.I. 45); Plaintiff's Answering Brief in Opposition to Defendant's Motion to Transfer ("Pl.'s Br.") (D.I. 74, 80); Defendant's Reply Brief in Support of its Motion to Transfer ("Def.'s Reply Br.") (D.I. 85); Plaintiff's Sur-Reply Brief in Opposition to Defendant's Motion to Transfer ("Pl.'s Sur-Reply Br.") (D.I. 93, 95); Defendant's Sur-Reply Brief in Support of its Motion to Transfer ("Def.'s Sur-Reply Br.") (D.I. 97, 106). For the following reasons, Defendant's Motion to Transfer is denied.

## BACKGROUND

Ricoh is a corporation organized and existing under the laws of Japan, with its principal place of business in Tokyo, Japan. Am. Compl. ¶ 1. Ricoh is the assignee and sole owner of the Asserted Patents, and has full and exclusive rights to bring an action and recover damages for infringement of the Asserted Patents. Id. ¶¶ 27–33.

Ricoh alleges and Defendant admits that Zoom is a corporation organized under the laws of the State of Delaware with its principal place of business in San Jose, California. Id. ¶ 2; Defendant's Answer and Defenses to Plaintiff's First Amended Complaint for Patent Infringement ("Def.'s Ans.") ¶ 2 (D.I. 40). Defendant moves to transfer this case from the District of Delaware to the Northern District of California. See Def.'s Mot.

## LEGAL STANDARD

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, which grant the Court jurisdiction over civil actions relating to patents, plant variety protection, copyrights, and trademarks.

Within the Third Circuit courts apply a two-step test when reviewing a motion to transfer: (1) determine whether the case could have been brought in the movant's suggested district and (2) consider and weigh twelve public and private

factors. Jumara v. State Farm Ins. Co., 55 F.3d 873, 878–79 (3d Cir. 1995). The twelve Jumara factors are divided equally into two groups: private interest factors and public interest factors. The six private interest factors are: (1) plaintiff's original forum choice; (2) defendant's preferred forum; (3) where the claim(s) arose; (4) the convenience of the parties, based on their relative physical and financial condition; (5) the convenience of witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). See id. at 878. The six public interest factors are: (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) a comparison of court congestion between the two fora; (10) the local interest in deciding local controversies at home; (11) the public policies of the two fora; and (12) the judge's familiarity with the applicable state law in a diversity case. See id. at 878–89.

## DISCUSSION

For step one, this case could have been filed in the Northern District of California in the first instance. Def.'s Br. at 7–8. The Parties agree that Defendant's principal place of business is in San Jose, California, therefore, the Northern District of California would have been a valid forum for Plaintiff to file suit. See Am. Compl. ¶ 2; Def.'s Ans. ¶ 2. For factor two, the Parties diverge in

their consideration and weighing of the twelve factors enumerated in Jumara. Compare Def.'s Br. at 7–22 with Pl.'s Br. at 6–22.

**I. Factor One: Plaintiff's Choice of Forum**

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request," and this choice "should not be lightly disturbed." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (internal quotations and citation omitted). Defendant avers that Plaintiff's choice in forum should be given minimal weight because Plaintiff is a foreign entity that does not have a principal place of business in Delaware. Def.'s Br. at 8–9. The cases Defendant cites in support of its argument do not convince this Court to disregard longstanding Third Circuit precedent.

First, Defendant relies on Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc. ("TuffStuff"), No. CV 16-733-GMS, 2017 WL 1536394 (D. Del. Apr. 27, 2017) to support its position. Def.'s Br. at 8–9. The court in TuffStuff accorded minimal weight to this factor because the plaintiff was "a non-practicing entity with minimal connections to Delaware [that] cannot reap the full benefits of heightened deference." Id. at *3. The TuffStuff court cited to Memory Integrity, LLC v. Intel Corp., C.A. No. 13-1804-GMS, 2015 WL 632026 (D. Del. Feb. 13, 2015) in support of its lesser deference theory. Id. When deciding to give plaintiff's choice of forum less deference, the district court in Memory Integrity,

LLC cited to Ithaca Ventures k.s. v. Nintendo of Am. Inc., No. 13-824-GMS, 2014 WL 4829027, at *2–3 (D. Del. Sept. 25, 2014) as support for its ruling. Memory Integrity, LLC, 2015 WL 632026 at *3. In Ithaca Ventures k.s., the district court minimized the weight afforded to the plaintiff's choice because it determined that the plaintiff corporation recently underwent a corporate reorganization motivated significantly by litigation efforts. Ithaca Ventures k.s., 2014 WL 4829027 at *2–3. Such concerns are not present here.

Second, Defendant quotes Take2 Techs. Ltd. v. Pacific Biosciences of Cal., Inc. ("Take2"), No. CV 22-1595-WCB, 2023 WL 4930359 (D. Del. Aug. 2, 2023) in support of its lesser deference theory. See Def.'s Br. at 8. The court in Take2 found that for a foreign entity that does not conduct business in Delaware, "this factor weighs against transfer, but not as strongly as it would if the plaintiffs had a presence in Delaware." Take2, 2023 WL 4930359 at *4. The plaintiffs in Take2 did not conduct business in or have a presence in the United States. Id. By contrast, Ricoh has a non-party subsidiary, Ricoh USA, based in Exton, Pennsylvania that conducts business in the United States. Pl.'s Br. at 4. When deciding to give plaintiff's choice of forum less deference, the district court in Take2 cited Selene Commc'n Techs., LLC v. Trend Micro Inc. ("Selene"), No. CV 14-435-LPS, 2015 WL 237142, at *1 (D. Del. Jan. 16, 2015) as support for its ruling. Take2, 2023 WL 4930359 at *4. In Selene, the district court reduced the

deference given to plaintiff's choice of forum because its principal place of business was not in Delaware, and had only recently incorporated in Delaware and acquired the patent in suit. Id. at *1. Such concerns about litigation-motivated incorporation and patent acquisition are not present here.

None of the case law that Defendant provides in its brief justifies ignoring Third Circuit precedent. This Court will give Plaintiff's choice to file in the District of Delaware paramount consideration, and this Court will not disturb Plaintiff's choice lightly. Shutte, 431 F.2d at 25. The court has previously noted that it is "difficult to understand why the plaintiff's forum choice in and of itself merits less weight when the plaintiff has no ties to the selected forum or when the facts underlying the controversy occurred elsewhere." VLSI Tech. LLC v. Intel Corp., No. CV 18-966-CFC, 2018 WL 5342650, at *5 (D. Del. Oct. 29, 2018); see also Blackbird Tech LLC v. E.L.F. Beauty, Inc., No. CV 19-1150-CFC, 2020 WL 2113528, at *2 (D. Del. May 4, 2020); Williamsburg Furniture, Inc. v. Lippert Components, Inc., No. CV 19-1993-CFC, 2020 WL 331119, at *3 (D. Del. Jan. 21, 2020); LoganTree LP v. Omron Healthcare, Inc., No. CV 18-1617 (MN), 2019 WL 4538730, at *5 (D. Del. Sept. 19, 2019). Many of the reasons for lessening the importance of a plaintiff's choice in forum "are subsumed and given weight under Jumara factors [three] (whether the claim arose elsewhere), [four] (convenience of the parties), [five] (convenience of the witnesses), [six] (location of books and

records), [eight] (practical considerations that could make the trial easy, expeditious, or inexpensive), and [ten] (the local interest in deciding local controversies at home)[.]" VLSI Tech. LLC, 2018 WL 5342650 at *5. In order to not double count any of the Jumara factors, the Court will not weigh those arguments here. Based upon Plaintiff's choice to file suit in the District of Delaware, the Court finds that this factor weighs heavily against transfer.

**II. Factor Two: Defendant's Forum Preference**

Defendant has proposed the Northern District of California as a forum to adjudicate this case. Def.'s Br. at 9–10. Defendant explains that the Northern District of California is a preferable forum because Defendant's principal place of business, majority of its party witnesses, and evidence are located in the Northern District of California. Id. The Court finds that this factor weighs slightly in favor of transfer, but the Court notes that Defendant's arguments related to convenience, party witnesses, and evidence are subsumed and given weight under Jumara factors four, five, and six, and thus the Court will not consider them here.

**III. Factor Three: Location Where the Claims Arose**

A patent infringement claim arises when a party "makes, uses, offers to sell, or sells any patented invention" without the authority to do so. 35 U.S.C. § 271(a). For purposes of transfer, this factor can be "neutral where the defendant in a patent infringement action operates on a national level as the infringement can be viewed

as occurring in all districts." Memory Integrity, LLC, 2015 WL 632026 at *3. However, a patent infringement claim does have "deeper roots in the forum where the accused products were developed." Id.

This factor weighs slightly in favor of transfer. Defendant primarily designs and develops the accused products in either the Northern District of California or the People's Republic of China ("China"), which plants the roots of Plaintiff's claim in either the Northern District of California or China. Def.'s Br. at 10–12.

## IV. Factor Four: Parties' Convenience

When determining convenience in a transfer analysis, a district court can look to several factors, which include "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." Smart Audio Techs., LLC v. Apple, Inc., 910 F. Supp. 2d 718, 731 (D. Del. 2012) (internal quotation and citation omitted).

First, "a Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense, 'inconvenient' to defend its actions in the forum in which the corporation has freely chosen to create itself." Audatex N. Am., Inc. v. Mitchell Int'l, Inc. ("Audatex"), No. CV 12-cv-139 (GMS), 2013 WL 3293611, at *5 (D. Del. June 28, 2013) (quoting Intellectual Ventures I LLC v. Altera Corp.,

842 F. Supp. 2d 744, 756 (D. Del. 2012)); see also Linex Techs., Inc. v. Hewlett-Packard Co. et al. ("Linex"), 11-400-GMS, 2013 WL 105323, at *15 (D. Del. Jan. 7, 2013); AIP Acquisition LLC v. iBasis, Inc., No. CV 12-616 GMS, 2012 WL 5199118, at *4 (D. Del. Oct. 19, 2012). Zoom chose to incorporate in Delaware, suggesting that Delaware is a presumed forum in which it would be convenient to litigate, contrary to Zoom's assertion that it should not have to litigate in Delaware. See Am. Compl. ¶ 2. Zoom is a global company incorporated in Delaware with its principal place of business in the Northern District of California. See id. Zoom also conducts significant business in China and has data centers located in the Northern District of California and Virginia. See Def.'s Br. at 10–12; Def.'s Sur-Reply Br. at 4–5. Plaintiff notes that only a small minority (approximately 10%) of Zoom's worldwide workforce are assigned to the San Jose, CA headquarters. Pl.'s Sur-Reply Br. at 4. Ricoh is also a global company incorporated in Japan with its principal place of business in Tokyo, Japan. Am. Compl. ¶ 1. Ricoh also has a non-party United States subsidiary, Ricoh USA, based in the Eastern District of Pennsylvania. Pl.'s Br, at 4.

Second, while Ricoh does not have a physical presence in Delaware, Zoom acknowledges that there is at least some evidence contrary to Zoom's assertion that Zoom had no presence in Delaware other than Zoom's incorporation. Def.'s Sur-Reply Br. at 2; see also Pl.'s Sur-Reply Br. at 1–3. For example, Plaintiff notes

that Zoom had at least one senior corporate executive living and working in Delaware for several years, who was a global head of a corporate department at Zoom. Pl.'s Sur-Reply Br. at 1–3. Moreover, both parties have a national presence and are global entities conducting business across the world. See Am. Comp. ¶ 1–2; Def.'s Br. at 10–12; Def.'s Sur-Reply Br. at 4-5; Pl.'s Sur-Reply Br. at 1–3. Should the action remain in Delaware, it is likely that both parties will incur travel costs. Zoom conducts its daily operations in the Northern District of California, China, and remotely across the world. See Am. Compl. ¶ 2. Ricoh and Ricoh USA conduct their daily operations in the Eastern District of Pennsylvania and Japan. See Am. Compl. ¶ 1; Pl.'s Sur-Reply Br. at 4. Lastly, neither party provided information pertaining to its inability to "bear these costs in light of its size and financial wherewithal." Smart Audio Techs., LLC, 910 F. Supp. 2d at 731 (internal quotation and citation omitted).

Upon review of these three factors, while it may be more convenient for Defendant to litigate in the Northern District of California, Defendant has failed to show that it faces a "unique or unexpected burden" if litigation continues in Delaware. ADE Corp. v. KLA-Tencor Corp., 138 F. Supp. 2d 565, 573 (D. Del. 2001). "[A]bsent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient." Id. Notably, the court has previously found this factor neutral in a

case when both parties were headquartered in California because the defendant failed to show it would suffer a "unique or unexpected burden" by having to litigate in Delaware, when the defendant had chosen to incorporate in Delaware. Arbor Glob. Strategies LLC v. Xilinx, Inc., No. CV 19-1986 (MN), 2020 WL 4673832, at *3–4 (D. Del. Aug. 12, 2020) (internal quotation and citation omitted).

Defendant avers that it faces an unexpected burden of "producing highly-sensitive source code outside of [the Northern District of California]." Def.'s Reply Br. at 2–3. The transport of source code is subsumed and given weight under Jumara factor six. To not double count any of the Jumara factors, the Court will not weigh this argument here.

Defendant relies on a footnote in Linex, 2013 WL 105323 at *5 n.5, for the proposition that Defendant's "lack of ties to Delaware[,]" and that Defendant is "headquartered in California," demonstrates that it faces an unexpected burden. Def.'s Reply Br. at 2–3. Read in context, Linex does not support Defendant's position. The Linex court found that three of four defendants were incorporated in Delaware, Apple being the exception, but all four defendants were headquartered in California. Linex, 2013 WL 105323 at *5. Apple's "lack of ties to Delaware" in Linex was an acknowledgement by the court that Apple was not incorporated in Delaware, thereby creating an unexpected burden as to Apple when one was not found for the other defendants. Id. Because Defendant is incorporated in

Delaware, Defendant cannot rely on a "lack of ties to Delaware" in combination with being "headquartered in California" to identify an unexpected burden. See id. Defendant chose to incorporate in Delaware, accepted the benefits of incorporation under the laws of the State of Delaware, had at least one global senior corporate executive living and working in Delaware for several years, and failed to show that it faces a "unique or unexpected burden" if litigation continues in Delaware. Thus, the Court finds that this factor weighs against transfer.

## V. Factor Five: Convenience of Non-Party Witnesses

When considering the convenience of non-party witnesses, the court does so "only to the extent that the witnesses may actually be unavailable for trial in one of the fora[.]" Jumara, 55 F.3d at 879. Defendant argues that Plaintiff has accused Zoom products used in connection with products made by third party DTEN, headquartered in San Jose, California. Def.'s Br. at 15. Defendant contends that these non-party witnesses are significant for trial and likely reside in the Northern District of California. Id. Defendant avers that it has identified individuals at Google and Cisco who may possess relevant information as to the prior art and that Google and Cisco have previously indicated that Delaware is an inconvenient forum. Id. Plaintiff counters that Defendant has not shown evidence that: "(1) any specific individual at these companies possesses unique, non-cumulative testimony relevant to this case, (2) that person will actually be called at trial, or (3) that

person will actually refuse to testify in Delaware absent a subpoena." Pl.'s Br. at 16.

Plaintiff "overstates the moving party's burden of demonstrating that a third-party witness will be unavailable or unwilling to travel to Delaware." Audatex, 2013 WL 3293611 at *5. In this assessment, "the court does not require such a clear statement—it is enough that likely witnesses reside beyond the court's subpoena power and that there is reason to believe that those witnesses will refuse to testify absent subpoena power." Id.

The named inventors on the asserted patents in Japan who no longer work for Ricoh are outside of either district's subpoena power. See Fed. R. Civ. P. 45(c) (authorizing a subpoena to compel attendance only "within 100 miles" or "within the state where the person resides, is employed, or regularly transacts business in person"). Proceeding in the District of Delaware or the Northern District of California would require the named inventors to fly to either district, and thus has no impact on whether the Parties could procure their presence through the legal process. See, e.g., MCP IP LLC v. Velocity Outdoor Inc., 795 F. Supp. 3d 510, 521–22 (D. Del. 2025); Audatex, 2013 WL 3293611 at *5; Smart Audio Techs., LLC, 910 F. Supp. 2d at 731–32; AIP Acquisition LLC, 2012 WL 5199118 at *4; Acuity Brands, Inc. v. Cooper Indus., Inc., No. 07–444–GMS, 2008 WL 2977464, at *2 (D. Del. July 31, 2008).

Because the potential witnesses from DTEN, Google, and Cisco reside beyond the Court's subpoena power, this Court finds this factor to weigh slightly in favor of transfer.

## VI. Factor Six: Location of Books and Records

The Court acknowledges that "[t]he notion that the physical location of some relevant documents should play a substantial role in the venue analysis is somewhat antiquated in the era of electronic storage and transmission." Sanofi-Aventis Deutschland GmbH v. Genentech, Inc., 607 F. Supp. 2d 769, 777 (E.D. Tex. 2009). The Court is aware, however, that the "antiquated era argument was essentially rejected in [In re Volkswagen of Am., Inc., 545 F.3d 304 (5th Cir. 2008) (en banc)] because it would render this factor superfluous." In re Genentech, Inc., 566 F.3d 1338, 1346 (Fed. Cir. 2009) (citing In re Volkswagen of Am., Inc., 545 F.3d at 316). Instead, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." Id. at 1345 (citation omitted). Defendant alleges that the custodians with access to the relevant technical documents are located in either the Northern District of California or China. Def.'s Br. at 17. There is little additional burden to produce the relevant technical documents located in China in the District of Delaware compared to the Northern District of California. Defendant avers that

Defendant maintains strict access control over its source code located in the Northern District of California, including complex approvals and physical security. Def.'s Br. at 13, 17. Because the Court cannot consider modern practicalities, this factor weighs slightly in favor of transfer to the Northern District of California. See also Linex, 2013 WL 105323 at *6 & n.6.

**VII. Factor Seven: Enforceability of the Judgment**

The Parties and the Court agree that this factor is neutral. Def.'s Br. at 21; Pl.'s Br. at 18, 21. A ruling in this matter carries the same enforceability whether it is entered in the District of Delaware or in the Northern District of California.

**VIII. Factor Eight: Practical Considerations**

Pursuant to Jumara, practical considerations are those "that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. Most of the concerns raised by the Parties under this factor are concerns that are subsumed and given weight under other Jumara factors. See Def.'s Br. at 18–19; Pl.'s Br. at 18–19. "Courts in this district have treated this factor as neutral when the parties' contentions regarding this factor 'have been raised, in some way, as to other Jumara factors,' so as to avoid 'double-counting' those considerations." Deloitte Consulting LLP v. Sagitec Sols. LLC, 692 F. Supp. 3d 421, 437 (D. Del. 2023) (quoting Wiremed Tech LLC v. Adobe Inc., No. 18-1066, 2019 WL 2250643, at *5 (D. Del. May 24, 2019)).

Defendant is correct that the Court should consider the Parties' incorporation status. Def.'s Br. at 18. Other district courts have done so and found "[t]his factor strongly favor[ed] transfer" when neither party "ha[d] a connection with Delaware other than its incorporation status." Applied Predictive Techs., Inc. v. MarketDial, Inc., No. CV 18-963-CFC, 2019 WL 2745724, at *5 (D. Del. July 1, 2019). Here, the Parties' connection to Delaware is Defendant's incorporation status and Defendant's previous presence of a senior corporate executive employee in Delaware. Am. Compl. ¶ 2; Def.'s Ans ¶ 2; Def.'s Sur-Reply Br. at 2; Pl.'s Sur-Reply Br. at 1–3. Additionally, Defendant conducts its business in either San Jose, California or in China, and Plaintiff conducts its business in either Exton, Pennsylvania or in Japan. Am. Compl. ¶¶ 1–2; Pl.'s Br. at 4; Def.'s Br. at 10–12. Considering the Parties' incorporation status and place of business, this factor weighs only slightly in favor of transfer to the Northern District of California.

## IX. Factor Nine: Court Congestion of the Two Fora

Defendant limits its comparison of court congestion between the District of Delaware and the Northern District of California, and between this Court and the per-judge average in the Northern District of California to open patent cases. Def.'s Br. at 19; Pl.'s Br. at 19–20. Defendant cites no support for limiting the comparison called for by the Jumara factors to either open patent cases or the congestion of the sitting judge. Jumara instructs the Court to compare "the relative

administrative difficulty in the two fora resulting from court congestion." Jumara, 55 F.3d at 879. Jumara does not instruct this Court to compare a subset of cases, such as open patent cases, between the District of Delaware and the Northern District of California.

Plaintiff notes that "as of June 30, 2024, [the District of Delaware] had fewer cases overall and fewer per active judgeship than [the Northern District of California]." Pl.'s Br. at 19. According to the most recent data provided by the Administrative Office of the United States Courts, between July 1, 2025 and June 30, 2026, there were 641 weighted filings per judge in the District of Delaware and there were 799 weighted filings per judge in the Northern District of California. See Admin. Office of the U.S. Courts, U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics 14, 66 (June 30, 2026) https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0630.2026.pdf. Weighted filings "account for the different amounts of time district judges require to resolve various types of civil and criminal actions . . . for more time consuming cases, higher weights are assessed." Admin. Office of the U.S. Courts, Explanation of Selected Terms 1, https://www.uscourts.gov/sites/default/files/document/explanation-of-selected-terms-2025.pdf. The Court finds that the number of weighted filings in the

Northern District of California is significantly higher than in the District of Delaware. This weighs against transfer.

Further, "this case has been assigned to a visiting judge with a smaller district court docket than the active judges in the District of Delaware." Deloitte Consulting LLP, 692 F. Supp. 3d at 437; Schwartz v. Latch, Inc, No. CV 23-27-WCB, 2024 WL 4765691, at *5 (D. Del. Nov. 13, 2024). This Court, sitting by designation from the United States Court of International Trade, has a less congested docket than both the District of Delaware and the Northern District of California. This factor weighs against transfer. See Schwartz, 2024 WL 4765691 at *5 (comparing the visiting judge's district court docket with the District of Delaware's docket).

Because both the District of Delaware and this Court, sitting by designation, have a less congested docket than the Northern District of California, this factor weighs against transfer.

## X. Factor Ten: Local Controversy

Defendant contends that this factor strongly favors transfer, while Plaintiff argues that this factor is neutral. Def.'s Br. at 20. Defendant argues that significant connections exist between the alleged infringing acts and California because the accused products were developed in California and Defendant is headquartered in California, whereas Delaware is connected only by Defendant's

place of incorporation. Id. Plaintiff asserts that as a matter of course, this court has found this factor to be neutral in patent disputes as they "do not give rise to a local controversy or implicate local interests." Pl.'s Br. at 20 (citing Sonos, Inc. v. Linkplay Tech. Inc., No. CV 1:24-CV-131, 2024 WL 4605870, at *11 (D. Del. Oct. 29, 2024)).

Courts in this district have previously held that patent cases "do[] not constitute a local controversy in most cases." Helicos Biosciences Corp. v. Illumina, Inc., 858 F. Supp. 2d 367, 375 (D. Del. 2012). Instead, "courts in this district have held that the 'local interest' factor is typically neutral in patent cases because in general a patent infringement action is 'more properly described as a national controversy.'" Take2, 2023 WL 4930359 at *10 (quoting Schubert v. Cree, Inc., No. CV 12-922-GMS, 2013 WL 550192 at *6 (D. Del. Feb. 14, 2013)).

Although Defendant has some connection to California because the accused products may have been developed partially in California, it is highly relevant that Defendant is a global company with employees spread across the world, including in China. Def.'s Br. at 13. The Court noted earlier that Defendant has approximately 10% of its workforce located in California, which does not show that it is predominantly a local California company. Pl.'s Sur-Reply Br. at 4. "This suggests that Defendant is not a 'local' company in the [District] such that local interests are, in fact, implicated here." P Tech, LLC v. Arthrex, Inc., No. CV

21-968 (MN), 2022 WL 1490733 (D. Del. May 11, 2022), at *5 (citing Rosebud LMS, Inc. v. Salesforce.com, Inc., No. 17-1712-CFC, 2018 WL 6061343, at *7 (D. Del. Nov. 20, 2018)). This Court finds that this action is governed under federal law, brought against a multi-national corporation that is not a predominantly California company, and concerns a product available nationally. See Audatex, 2013 WL 3293611 at *7. Accordingly, this Court finds that this action implicates a national, rather than a local, controversy. See id.

Defendant's California headquarters establishes at least some interest by California in adjudicating the dispute, while Defendant's status as a Delaware corporate entity means that Delaware also has some interest in adjudicating the dispute. Where "[b]oth forums have a local interest in the controversy, and neither forum's interest is substantially greater than the other[,]" this factor is neutral. Deloitte Consulting LLP, 692 F. Supp. 3d at 437. The Court finds that this factor is neutral.

## XI. Factor Eleven: Public Policy Considerations

Defendant asserts that this factor is neutral because it is irrelevant or applies equally across districts. Def.'s Br. at 21 (citing Take2, 2023 WL 4930359 at *10 (finding Jumara factor eleven neutral for patent infringement claims in the District of Delaware when only the defendant is a Delaware corporation and defendant "does not want to litigate here")).

"The public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for resolution of business disputes." Graphics Props. Holdings Inc. v. Asus Computer Int'l, Inc. ("Graphics Props."), 964 F. Supp. 2d 320, 331 (D. Del. 2013) (quoting Wacoh Co. v. Kionix Inc., 845 F. Supp. 2d 597, 604 & n.9 (D. Del. 2012)). Courts in this district have previously found that "this factor weighs slightly against transfer because Plaintiff is a Delaware limited liability company and Defendant is a Delaware corporation and public policy encourages Delaware corporations to resolve disputes in Delaware courts." Arbor Glob. Strategies LLC, 2020 WL 4673832 at *6. Courts in this district have previously found that this factor weighed against transfer even when only one party was a Delaware corporation. Deloitte Consulting LLP, 692 F. Supp. 3d at 437 (citing P Tech, LLC, 2022 WL 1490733 at *6); Graphics Props., 964 F. Supp. 2d at 331.

Here, Defendant is incorporated in Delaware and should be encouraged to use Delaware as a forum for its business dispute. See Am. Compl. at ¶ 2. This analysis is in harmony with the Court's earlier analysis under factor four regarding the Parties' convenience, which found that entities that seek out and claim the benefits of incorporating in Delaware should not be able to argue that litigating in Delaware is inconvenient. This factor weighs strongly against transfer.

## XII. Factor Twelve: Familiarity with State Law

The Parties and the Court agree that this factor is neutral. Def.'s Br. at 21–22; Pl.'s Br. at 20–21. Plaintiff's claims arise under federal patent law; state law is not implicated in this matter. Both the District of Delaware and the Northern District of California can apply the federal law equally to these claims. Gen. Sci. Corp. v. Den-Mat Holdings, LLC, No. CV 21-882-CFC, 2021 WL 4622548, at *4 (D. Del. Oct. 7, 2021); Rampart IC, LLC v. Egg Medical, Inc., No. 1:24-cv-00643-JCG, 2025 WL 227287, at *6 (D. Del. Jan. 17, 2025).

## XIII. Balancing the Twelve Jumara Factors

When analyzing the twelve Jumara factors, district courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." Jumara, 55 F.3d at 883 (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22 (1988)). To grant a motion to transfer, a district court must find that these factors strongly favor transfer. Shutte, 431 F.2d at 25 ("[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." (internal quotation and citation omitted)).

Deciding what balance of factors "strongly favors" transfer is within the Court's discretion. Here, five factors favor transfer, three factors are neutral, and

four factors disfavor transfer. Each factor does not carry equal weight in the Court's consideration. Intellectual Ventures I LLC, 842 F. Supp. 2d at 754–61 (describing the Jumara factors and affording them differing weight based on the facts of the case). In Intellectual Ventures I LLC, the court had five factors favoring transfer, four neutral factors, and three factors disfavoring transfer. Id. at 760. The Intellectual Ventures I LLC court held that the defendants failed to prove that the factors weighed strongly in favor of transfer. Id. ("On the whole, then, recognizing the appropriate weight to be granted to each factor, the [c]ourt concludes that [d]efendants have failed to satisfy their burden of showing that the balance of convenience factors and interests of justice weigh strongly in favor of transfer.").

Here, the factors weighing against transfer are Plaintiff's choice of forum, the Parties' convenience, court congestion, and public policy considerations. The neutral factors are judgment enforceability, local controversy, and familiarity with state law. The factors weighing in favor of transfer are Defendant's forum preference, the location where the claim arose, convenience of non-party witnesses, location of books and records, and practical considerations. The five factors weighing in favor of transfer should all be given minimal weight, while the four factors weighing against transfer should all be given significant weight. After considering and balancing all twelve of the Jumara factors, the Court concludes

that Defendant has failed to satisfy its burden of showing that the balance of convenience factors and interests of justice weigh strongly in favor of transfer. This Court denies Defendants' motion to transfer to the Northern District of California.

## CONCLUSION

Upon consideration of Defendant's Motion for Transfer under 28 U.S.C. § 1404 (D.I. 44) and all other papers and proceedings in this action, it is hereby

**ORDERED** that Defendant's Motion for Transfer under 28 U.S.C. § 1404 (D.I. 44) is denied.

IT IS SO ORDERED this 15th day of October, 2026.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves
U.S. District Court Judge[*]

[*]Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.